http://www.va.gov/vetapp16/Files3/1621747.txt

Citation Nr: 1621747 
Decision Date: 05/31/16 Archive Date: 06/08/16

DOCKET NO. 14-09 584 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida

THE ISSUES

1. Entitlement to a disability rating in excess of 50 percent for posttraumatic stress disorder (PTSD).

2. Entitlement to a total disability rating based on individual unemployability due to service-connected disability (TDIU).

REPRESENTATION

Veteran represented by: Florida Department of Veterans Affairs

ATTORNEY FOR THE BOARD

Mike A. Sobiecki, Associate Counsel

INTRODUCTION

The Veteran served on active duty from November 1968 to April 1970.

This matter is before the Board of Veterans' Appeals (Board) on appeal from a December 2011 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida.

In September 2015, the Board remanded this appeal in order to ascertain the current level of severity of the Veteran's disorder. Such development has been completed. Stegall v. West, 11 Vet. App. 268 (1998).

The issue of entitlement to a TDIU has been raised by the record. See the November 2015 VA examination report. Accordingly, it is considered part-and-parcel of this appeal for an increased rating and is addressed in the REMAND section below. See Rice v. Shinseki, 22 Vet. App. 447 (2009).

FINDING OF FACT

For the entire period on appeal, the Veteran's PTSD more nearly approximates occupational and social impairment with deficiencies in most areas, but does not result in total occupational and social impairment.

CONCLUSION OF LAW

The criteria for a disability rating of 70 percent, but no higher, for PTSD are met for the entire appeal period. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. 
§§ 3.321, 4.1, 4.2, 4.3, 4.7, 4.126, 4.130, Diagnostic Code 9411 (2015).

REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

VA has a duty to provide notice of the information and evidence necessary to substantiate a claim. 38 U.S.C.A. § 5103(a) (West 2014); 38 C.F.R. § 3.159(b) (2015). An August 2011 letter satisfied the duty to notify provisions, as it informed the Veteran of the evidentiary requirements for an increased rating claim, the division of responsibility between the Veteran and VA for obtaining evidence, and of the process by which disability ratings and effective dates are assigned.

VA also has a duty to provide assistance to substantiate a claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c).

The Veteran's service treatment records have been obtained. Identified post-service VA and private treatment records have also been obtained. The Veteran was provided VA medical examinations in August 2011 and November 2015. The reports of these examinations are adequate for rating purposes, as they are based upon consideration of the Veteran's prior medical history and examinations, provide findings concerning the severity of the Veteran's PTSD that are responsive to the rating criteria, and contain reasoned explanations. Thus, VA's duty to assist has also been met.

II. Increased Rating

A. Legal Framework

Ratings are based on a schedule of reductions in earning capacity from specific injuries or combination of injuries. The ratings shall be based, as far as practicable, upon the average impairments of earning capacity resulting from such injuries in civil occupations. 38 U.S.C.A. § 1155. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability. 38 C.F.R. § 4.1.
Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. When after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 3.102, 4.3. 

The Veteran's PTSD has been evaluated under the General Rating Formula for Mental Disorders as 50 percent disabling. 38 C.F.R. § 4.130, Diagnostic Code (DC) 9411. 

Under the General Rating Formula, 50 percent rating is warranted when there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more often than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. Id.

A 70 percent rating is warranted when there is occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation, obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); inability to establish and maintain effective relationships. Id. 

A 100 percent rating is warranted when there is total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id.

As the United States Court of Appeals for the Federal Circuit has recently explained, evaluation under 38 C.F.R. § 4.130 is "symptom-driven," meaning that "symptomatology should be the fact-finder's primary focus when deciding entitlement to a given disability rating" under that regulation. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 116-17 (Fed.Cir.2013). The symptoms listed are not exhaustive, but rather "serve as examples of the type and degree of symptoms, or their effects, that would justify a particular rating." Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). In the context of determining whether a higher disability evaluation is warranted, the analysis requires considering "not only the presence of certain symptoms[,] but also that those symptoms have caused occupational and social impairment in most of the referenced areas" - i.e., "the regulation ... requires an ultimate factual conclusion as to the Veteran's level of impairment in 'most areas.'" Vazquez-Claudio, 713 F.3d at 117-18. 

Additionally, consideration is given to the frequency, severity, and duration of psychiatric symptoms, the length of remission, and the Veteran's capacity for adjustment during periods of remission. The rating agency shall assign an evaluation based on all the evidence of record that bears on occupational and social impairment, rather than solely on the examiner's assessment of the level of disability at the moment of the examination. See 38 C.F.R. § 4.126(a). Furthermore, when evaluating the level of disability arising from a mental disorder, the rating agency will consider the extent of social impairment, but shall not assign an evaluation solely on the basis of social impairment. 38 C.F.R. § 4.126(b). It is necessary to evaluate a disability from the point of view of the Veteran working or seeking work. 38 C.F.R. § 4.2.

Where it is not possible to separate the effects of a nonservice-connected condition from those of a service-connected disorder, reasonable doubt will be resolved in the claimant's favor and all symptoms and effects will be attributed to the service-connected disability. Mittleider v. West, 11 Vet. App. 181, 182 (1998).

B. Analysis

The Veteran seeks a disability rating in excess of 50 percent for PTSD. The appeal period before the Board begins on July 28, 2010, one year prior to the date VA received the claim for an increased rating. Gaston v. Shinseki, 605 F.3d 979, 982 (Fed. Cir. 2010). For the reasons that follow, the Board finds that a 70 percent rating is warranted for the entire period on appeal.

Preliminarily, the Board notes that the Veteran is also diagnosed with nonservice-connected alcohol abuse disorder, cannabis use disorder, unspecified personality disorder (to include, antisocial personality disorder), polysubstance dependence, substance induced motor disorder, and the record also shows a prior diagnosis of bipolar disorder. There is no indication that the symptoms of these disorders are separable from his service-connected PTSD and, in fact, VA examiners have said they are inseparable. See November 2015 VA examination report; August 2011 VA examination report. Thus, the Board's evaluation attributes all of the Veteran's mental health symptoms to his service-connected PTSD, in accordance with Mittleider, supra.

The Board finds that there is a reasonable basis to conclude that the Veteran's PTSD more nearly approximates occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood. 38 C.F.R. §§ 4.3, 4.7, 4.130, DC 9411. This conclusion is supported by the Veteran's severe symptomatology and its impact on his occupational and social functioning. 

The August 2011 VA examination report showed that the Veteran experiences chronic anxiety, suspiciousness, panic attacks more than once a week, chronic sleep impairment, and difficulty establishing and maintaining effective work and social relationships. It was also noted that the Veteran experiences markedly diminished interest or participation in significant activities, has irritability or outbursts of anger, difficulty concentrating, hypervigilance, and exaggerated startle response. 

These symptoms manifest in the Veteran having few friends or healthy social activities. When not working as a painter, the Veteran would meet with his limited group of friends and engage in substance and/or alcohol abuse, and then he would return home and continue those activities in isolation. See November 2015 VA examination report. He described himself as having a short temper, and a lay statement from a friend shows that this could escalate to violence. See September 2011 Buddy Statement. The Veteran has limited interaction with his family members. He previously had a relationship with his brother, who lives nearby, but no longer maintains contact. The Veteran has been unable to maintain relationships with significant others for any extended period of time.

With regards to occupational impairment, the records show that the Veteran has worked as a painter. See November 2015 VA examination report; August 2011 VA examination report. Prior to the period on appeal, he was self-employed but then he found work painting for a custom cabinet company until around 2013 or 2014. The Veteran reported that this job was full time, and that he could perform it adequately, but would occasionally have difficulty concentrating and that he would sometimes go in late and leave early. In his March 2014 Substantive Appeal, he asserted that he could not keep a job for long and could not get along with his coworkers.

Based on these symptoms and functional manifestations, as well as the in-person mental status evaluations, which were generally unremarkable, the August 2011 examiner found that the Veteran's PTSD results in occupational and social impairment with reduced reliability and productivity. Such a level of impairment corresponds to a 50 percent level of impairment pursuant to DC 9411. The Board, however, finds that the Veteran additionally experiences passive suicidal ideation once or twice a week, and per his report he was unable to communicate this symptom during his examinations. The Veteran did endorse this symptom in his April 2012 Notice of Disagreement and March 2014 Substantive Appeal, and it was also reported in a September 2011 buddy statement submitted by the Veteran's friend, who also indicated that the Veteran had occasional thoughts of hurting others. The Veteran reported frequent fleeting thoughts of suicide several times a week in September 2012. Additionally, a September 2012 suicide risk assessment notes a history of a prior suicide attempt. Given these reports, the Board finds this symptom to be credible, and also notes that the Veteran is competent to relate its occurrence because it is readily observable. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). Moreover, a Global Assessment of Functioning (GAF) score of 50 was assigned in September 2012, reflective of serious symptoms or any serious impairment in social or occupational functioning. In light of this assessment, plus evidence of suicidal ideation, impaired impulse control, thoughts of hurting others, difficulty in adapting to stressful circumstances (including in a work setting) and the Veteran's reported inability to maintain effective relationships (see March 2014 Substantive Appeal), the Board finds that the Veteran's level of occupational and social impairment is actually worse than that identified by the August 2011 examiner, and it more nearly approximates occupational and social impairment with deficiencies in most areas corresponding to a 70 percent rating pursuant to DC 9411. See 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 3.102, 4.3, 4.7, 4.130.

The Board has also considered the conclusion of the November 2015 VA examiner, which would correspond to a much lesser level of impairment, however it finds that examination to not be representative of the Veteran's general level impairment throughout the period on appeal. Rather, the Board believes that examination report described the Veteran's symptoms on that specific day of evaluation and, in actuality, his symptoms and their manifestations are typically more severe for reasons outlined above. See 38 C.F.R. § 4.126(a).

A higher, 100 percent rating is warranted where there is total occupational and social impairment. A review of the record, does not show the Veteran's PTSD has approximated this level of impairment at any point during the period on appeal. The Veteran has shown to have and socialize with friends. He has also not shown to present any of the symptoms typically indicative of such a level of impairment, such as gross impairment of thought process or communication, persistent delusions or hallucinations, persistent danger of hurting oneself or others, disorientation to time or place, or an inability to complete activities of daily living.
The Board has considered a September 2012 Psychiatry consult in which the Veteran reported that from January to August 2012 he spent the majority of his time drinking and that he completely disengaged from the world and from his friends. That during that period he spent time thinking about past traumatic events and points of shame. This statement, in isolation, however, does not provide the Board with sufficient reason find that the Veteran's disability approximates a higher level of impairment. There are also no concurrent treatment records that support more severe symptomatology or functional impairment.

Accordingly, the Board finds that there is not a reasonable basis to conclude that the Veteran's PTSD has more nearly approximated a higher, 100 percent level of impairment at any point of the appeal, to include on a limited basis as a staged rating. The Board does find that the Veteran's symptomatology has more nearly approximated the criteria corresponding to a 70 percent rating for the appeal period. 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 3.102, 4.3, 4.7, 4.130, DC 9411; see also Hart v. Mansfield, 21 Vet. App. 505 (2007); Francisco v. Brown, 7 Vet. App. 55 (1994).

The Board has also considered whether referral for an extraschedular rating is warranted. 38 C.F.R. § 3.321(b). In Thun v. Peake, 22 Vet. App. 111, 115-16 (2008), the Court explained how the provisions of section 3.321 are applied. Specifically, the Court stated that the determination of whether a claimant is entitled to an extraschedular rating under section 3.321 is a three-step inquiry. First, it must be determined whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. In this regard, the Court indicated that there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required.

Second, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as "marked interference with employment" and "frequent periods of hospitalization." Third, when an analysis of the first two steps reveals that the rating schedule is inadequate to evaluate a claimant's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation Service to determine whether, to accord justice, the claimant's disability picture requires the assignment of an extraschedular rating. Id. 

The Board has carefully compared the level of severity and symptomatology of the Veteran's service-connected PTSD with the established criteria found in the rating schedule, and notes that the symptoms listed in DC 9411 are not intended to constitute an exhaustive list, but rather serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. Mauerhan, 16 Vet. App. at 436. The Board finds that the Veteran's symptomatology is fully addressed by the rating criteria under which such disability is rated. The rating schedule fully contemplates the described psychiatric symptoms as well as the Veteran's level of social and occupational impairment, and provides for ratings higher than that assigned based on more significant functional impairment. And in assigning the evaluation, the Board has also attributed to the Veteran's service-connected PTSD all of the Veteran's mental health symptoms relating to nonservice-connected disabilities as the evaluations found the symptoms to be inseparable. Mittleider, 11 Vet. App. at 182.

Therefore, the Board finds that the rating criteria reasonably describe the Veteran's disability level and symptomatology of his service-connected PTSD. As such, the rating schedule is adequate. There is nothing exceptional or unusual about the Veteran's PTSD not considered in the rating criteria. See Mauerhan, 16 Vet. App. at 436. Accordingly, the Board need not proceed to consider the second Thun factor. Consequently, the Board concludes that referral of this case for consideration of an extraschedular rating is not warranted. 38 C.F.R. § 3.321(b); Thun, 22 Vet. App. at 115.

In conclusion, the Board finds that a disability rating of 70 percent is warranted for the entire period on appeal. The Board, however, finds that the preponderance of the evidence is against higher ratings for any portion of the appeal period. In denying such ratings, the Board finds the benefit of the doubt doctrine is not applicable. 38 U.S.C.A.§ 5107; 38 C.F.R. §§ 4.3 , 4.7.

ORDER

A 70 percent rating, but no higher, for PTSD is granted for the entire appeal period, subject to the laws and regulations governing payment of monetary benefits.

REMAND

The November 2015 VA examination report shows that the Veteran reported to being unemployed since 2013 or 2014. As this report of unemployability has occurred in conjunction with an appeal for an increased rating, the Board finds that this issue of entitlement to a TDIU has been raised and is considered part-and-parcel of the increased rating claim. Rice, 22 Vet. App. 447.

Accordingly, the Veteran should be provided VCAA notice as to how to substantiate his claim, and he should also be asked to complete a VA Form 21-8940, Veteran's Application for Increased Compensation Based on Unemployability.

Accordingly, this issue is REMANDED for the following actions:

1. Provide the Veteran VCAA notice for a TDIU claim. 
Ask the Veteran to complete a VA Form 21-8940, Veteran's Application for Increased Compensation Based on Unemployability.

The Veteran should be provided adequate time to respond and submit evidence in support of this claim.
2. Then adjudicate the Veteran's entitlement to a TDIU, and issue a Supplemental Statement of the Case as appropriate. 

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112.

______________________________________________
S. BUSH
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs