# United States Court of Appeals for the Federal Circuit

---

**GENARO VAZQUEZ-CLAUDIO,**
*Claimant-Appellant,*

**v.**

**Eric K. Shinseki,**
**SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

---

2012-7114

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 10-3339, Judge William P. Greene, Jr.

---

Decided: April 8, 2013

---

ELIZABETH A. LAUGHTON, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, of Washington, DC, argued for claimant-appellant. With her on the brief were RONALD L. SMITH and LILLIAN M. ROBINSON.

ERIC P. BRUSKIN, Trial Attorney, Commercial Litigation Branch, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and

SCOTT D. AUSTIN, Assistant Director. Of counsel on the brief were MICHAEL J. TIMINSKI, Deputy Assistant General Counsel, and MARTIE ADELMAN, Attorney, United States Department of Veterans Affairs, of Washington, DC.

———————————

Before MOORE, CLEVENGER, and O'MALLEY, *Circuit Judges.*

CLEVENGER, *Circuit Judge.*

Genaro Vazquez-Claudio appeals a decision by the United States Court of Appeals for Veterans Claims ("Veterans Court") which affirmed a denial by the Board of Veterans' Appeals ("Board") of Vazquez-Claudio's claim for an initial disability rating greater than 50 percent for his service-connected post-traumatic stress disorder ("PTSD"). *Genaro Vazquez-Claudio v. Eric K. Shinseki, Secretary of Veterans Affairs*, No. 10-3339 (Vet. App. Mar. 8, 2012) ("Veterans Court Op.") (affirming Board decision in *In the Appeal of Genaro Vazquez-Claudio*, No. 05-40 257 (B.V.A. Jun. 18, 2010) ("Board Op.")). For the reasons set forth below, we affirm.

I

Mr. Vazquez-Claudio is a Vietnam veteran who served on active duty in the U.S. Army from 1968 until 1970. Following his service, Vazquez-Claudio filed a claim with the Department of Veterans Affairs ("VA") seeking disability compensation for PTSD. On February 24, 2005, after finding that his PTSD was service-connected, the VA granted his request for benefits with an effective date of June 13, 1994.

The VA rated Mr. Vazquez-Claudio's PTSD as 50 percent disabling,[1] a rating assigned to veterans who demonstrate the following level of PTSD-related impairment and symptoms:

> [o]ccupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships

38 C.F.R. § 4.130.

Mr. Vazquez-Claudio appealed this decision to the Board arguing entitlement to a 70 percent rating, which is assigned to veterans who suffer from more severe PTSD-related impairment and symptoms:

> [o]ccupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to

---

[1]   Once a veteran has been diagnosed with service-connected PTSD, the VA reviews his medical history to determine how badly the disorder has disrupted the veteran's social and occupational functioning. The level of disability is rated according to a General Rating Formula for Mental Disorders, codified at 38 C.F.R. § 4.130 ("General Rating Formula"), which provides for ratings of zero, 10, 30, 50, 70, or 100 percent. The VA compensates veterans beginning at 10 percent disability, and compensation increases at each level.

such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); inability to establish and maintain effective relationships.

*Id.*

The Board undertook an extensive evaluation of Mr. Vazquez-Claudio's psychiatric history based upon numerous VA examination reports. Board Op. at 6–10. The reports showed that Mr. Vazquez-Claudio suffered from significant PTSD-related symptoms, such as anxiety, depression, nightmares, discomfort in large crowds, a constricted affect, and difficulty in social and work settings. *Id.* Moreover, the Board noted that Mr. Vazquez-Claudio had been unable to work since 1994, when he left his job as a police officer as the result of an emotional breakdown following a prisoner's suicide. *Id.* at 7. Nevertheless, the Board found that other than occasional suicidal ideation, social isolation, and some difficulty adapting to stressful situations, none of his symptoms corresponded to impairment greater than 50 percent. *Id.* at 10–11. As such, the Board held that his occupational and social impairment most nearly approximated the "reduced reliability and productivity contemplated by the assigned rating of 50 percent." *Id.* at 10.

Mr. Vazquez-Claudio then appealed to the Veterans Court, where he argued that the Board had wrongly denied his claim because he lacked certain symptoms associated with a 70 percent disability rating, rather than

evaluating whether the symptoms he actually did present have caused deficiencies in "most areas," such as work, school, family relations, judgment, thinking, or mood. Veterans Court Op. at 3. The Veterans Court disagreed, stating that "[t]he issue before the Board was not how many 'areas' Mr. Vazquez-Claudio has demonstrated deficiencies in but, rather, 'the frequency, severity, and duration of the psychiatric symptoms, the length of remissions, and Mr. Vazquez-Claudio's capacity for adjustment during periods of remission.'" *Id*. (citing 38 C.F.R. § 4.126(a)). Accordingly, the Veterans Court affirmed the Board's denial of a 70 percent disability rating.

## II

In the present appeal, Mr. Vazquez-Claudio attacks both the Board's decision and the Veterans Court's affirmance as inconsistent with the controlling regulation. In particular, he argues that because 38 C.F.R. § 4.130 states that PTSD is 70 percent disabling if it causes "[o]ccupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood," a veteran should be entitled to a 70 percent rating if his symptoms cause impairment in "most" of those areas, regardless of what his symptoms actually are. He further believes that, if the Board had applied this interpretation, it would have granted him a 70 percent disability rating because his symptoms have caused impairment in at least five of the six "areas" recited in the regulation.

The government contends that we lack jurisdiction to consider this question under 38 U.S.C. § 7292(d)(2), alleging that Mr. Vazquez-Claudio merely seeks review of the VA's application of the regulation to the facts in his case. We disagree. As discussed below, Mr. Vazquez-Claudio's appeal raises two separate questions of regulatory interpretation, and we review these questions de

novo.   38 U.S.C. § 7292; *Hodge v. West*, 155 F.3d 1356, 1359 (Fed. Cir. 1998) (The "proper interpretation of a regulation" is a "purely legal question").

## A

The first regulatory interpretation issue raised by this appeal is whether a 70 percent disability rating is restricted by its associated list of symptoms.  The dispute arises because the list of symptoms at the 70 percent level is preceded by "such as," and is therefore non-exhaustive.  The question is whether this permits a veteran to rely upon any and all symptoms he may have, rather than symptoms of like kind to those listed in the regulation, as evidence of impairment at the 70 percent level.

The particular facts of Mr. Vazquez-Claudio's case illuminate the problem.  His symptoms are generally less severe than those associated with a 70 percent rating, but are severe enough to at least mildly impair his work, family relations, judgment, thinking, and mood.  Therefore, his claim for increased benefits certainly fails if the rating determination hinges upon the existence or absence of certain symptoms, but may succeed if the symptoms are secondary to a finding of impairment in "most" of the listed "areas."

In construing regulatory language, we must read the disputed language in the context of the entire regulation as well as other related regulatory sections in order to determine the language's plain meaning.  *Lengerich v. Dep't of Interior*, 454 F.3d 1367, 1370 (Fed. Cir. 2006) (citing *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1577–78 (Fed. Cir. 1995) (en banc)).  We therefore consider the narrow definition of a 70 percent disability in the context of the General Rating Formula's broader regulatory structure.

The General Rating Formula outlines six disability levels from zero to 100 percent, each defined using a

similar format. For instance, all five of the non-zero disability ratings in the General Rating Formula require some degree of occupational and social impairment.[2] All non-zero disability levels are also associated with objectively-observable symptomatology, and the veteran's impairment must be "due to" those symptoms. Finally, and most importantly for this case, as the ratings increase from 10 to 100 percent, the associated symptoms become noticeably more severe.

For example, at the low end, PTSD is 10 percent disabling if it causes impairment due to symptoms so "mild or transient" that they can be controlled with medication, or that only appear during periods of significant stress. 38 C.F.R. § 4.130. At the high end, PTSD is 100 percent disabling if it causes "total occupational and social impairment" due to extremely severe symptoms such as persistent hallucinations, an inability to maintain minimal personal hygiene, or gross speech and thought impairment. *Id.*

---

[2]  A zero percent disability rating applies when PTSD has been diagnosed, but it does not interfere with social or occupational functioning. 38 C.F.R. § 4.130. A 10 percent disability exists when "mild or transient symptoms" or "symptoms controlled by continuous medication" contribute to some "occupational and social impairment." *Id.* A 30 percent disability is defined by "[o]ccupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks," whereas a 50 disability is defined by "[o]ccupational and social impairment with reduced reliability and productivity. . . ." *Id.* A 70 percent disability causes impairment in "most areas" of occupational and social functioning, and a 100 percent disability causes "total" impairment. *Id.*

The intermediate disability levels are also distinguished from one another by the frequency, severity, and duration of their associated symptoms. For instance, if a veteran suffers panic attacks "weekly or less often," this indicates 30 percent disability. *Id.* If those panic attacks occur "more than once a week," this indicates a 50 percent disability. *Id.* If the panic reaches "near-continuous" levels, then the veteran may be 70 percent impaired. *Id.* By the same token, mild memory loss (such as forgetting names or recent events) indicates a 30 percent disability, whereas more severe memory loss (such as the inability to retain all but the most highly-learned material) indicates 50 percent disability, and forgetting one's own name indicates a 100 percent disability. *Id.*

In fact, most of the General Rating Formula is dedicated to associating certain symptoms with certain disability ratings, and to this end, the regulation's plain language highlights its symptom-driven nature. Mr. Vazquez-Claudio's proposed interpretation, meanwhile, would nullify this clear structure by reading relevant symptomatology almost entirely out of the regulation at the 70 percent level. Under his construction, a veteran whose symptoms correspond exactly to a 30 percent disability could attain a 70 percent rating simply by demonstrating that those symptoms have adversely impacted his work, school, family relations, judgment, thinking, and mood. This interpretation runs contrary to the regulation's plain language.

This understanding is reinforced by 38 C.F.R. § 4.126, a companion section specifically referenced in the preface to § 4.130. *See* 38 C.F.R. § 4.130; *Sellers v. Principi*, 372 F.3d 1318, 1326 (Fed. Cir. 2004) (identifying 38 C.F.R. §§ 4.125–4.130 as the implementing regulations for mental disorders). Section 4.126(a) states that "[w]hen evaluating a mental disorder, the rating agency shall consider the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the

veteran's capacity for adjustment during periods of remission." Reading §§ 4.126 and 4.130 together, it is evident that the "frequency, severity, and duration" of a veteran's symptoms must play an important role in determining his disability level.

The regulatory history of section § 4.130 further supports this analysis. When the VA first proposed the current version of the regulations in 1995, its stated intent was to replace a system that relied in part upon subjective determinations with one that "rel[ies] on specific signs and symptoms." 60 Fed. Reg. 54,825, 54,826 (Oct. 26, 1995) (notice of proposed rulemaking). The VA reiterated this intent when it announced the final rule, saying that "[i]n essence, we have restructured the evaluation criteria so that it is the severity of the effects of the symptoms as described by the examiner that determines the rating." 61 Fed. Reg. 52,695, 52,696-97 (Oct. 8, 1996) (final rule notice). The VA thus intended the General Rating Formula to provide a regulatory framework for placing veterans on the disability spectrum based upon their objectively observable symptoms.

In view of the regulation's plain language, companion sections, and history, we reject Mr. Vazquez-Claudio's regulatory construction, which would render symptomatology a secondary consideration at the 70 percent level. We hold instead that a veteran may only qualify for a given disability rating under § 4.130 by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration.

B

The second regulatory interpretation question presented by this appeal is whether the fact-finder must make findings regarding the veteran's occupational and social impairment in "most areas" when evaluating entitlement to a 70 percent disability rating.

When the Veterans Court considered this question below, it resolved that "[t]he issue before the Board was not how many 'areas' Mr. Vazquez-Claudio has demonstrated deficiencies in but, rather, 'the frequency, severity, and duration of the psychiatric symptoms, the length of remissions, and Mr. Vazquez-Claudio's capacity for adjustment during periods of remission.'" Veterans Court Op. at 3 (citing § 4.126(a)). Mr. Vazquez-Claudio disagrees with this articulation of the law. He believes that under the plain language of § 4.130, the "areas" of his impairment were clearly at issue before the Board, and were in fact the ultimate issue. Accordingly, he faults the Veterans Court for making an erroneous legal statement, and also the Board for failing to find which "areas" were relevant to his case and whether he was impaired in "most" of those areas.

For the reasons outlined in the previous section, the Veterans Court was correct insofar as it held that symptomatology should be the fact-finder's primary focus when deciding entitlement to a given disability rating. However, in the context of a 70 percent rating, § 4.130 requires not only the presence of certain symptoms but also that those symptoms have caused occupational and social impairment in most of the referenced areas. Therefore, to the extent that the Veterans Court implied that the listed "areas" were irrelevant to the 70 percent disability determination, this was error. Although the veteran's symptomatology is the primary consideration, the regulation also requires an ultimate factual conclusion as to the veteran's level of impairment in "most areas."

This misstatement of the law may be harmless error if the Board correctly applied § 4.130. *See Menegassi v. Shinseki*, 638 F.3d 1379, 1382-83 (Fed. Cir. 2011). We therefore consider whether the Board's findings support a denial of benefits under the proper regulatory construction.

Regarding symptomatology, the Board made the undisputed finding that Mr. Vazquez-Claudio exhibited few symptoms of like kind to those associated with a 70 percent disability, apart from occasional suicidal ideation, social isolation, and some difficulty adapting to stressful situations. Board Op. at 10.

The Board also made findings as to how those symptoms impacted the occupational and social "areas" listed in the regulation. For instance, the Board found that Mr. Vazquez-Claudio's symptoms had not negatively impacted his relationships with his wife, four children, and friends, and thus found that "it cannot be said that he is unable to establish and maintain effective relationships." *Id*. Furthermore, despite noting that he had "experienced some emotional and mental health difficulties during his last job as a police officer," the VA examiners had only described his work impairment as "moderate," "decreased," or "marked." *Id*.

Based upon those and other findings, the Board ultimately concluded that the evidence was "not consistent with occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking or mood, which would warrant a 70 percent rating." Board Op. at 10. Although we acknowledge that the Board might have elaborated in more detail why Mr. Vazquez-Claudio had not suffered impairment in certain of the referenced areas, we cannot say that it failed to make the necessary findings to support its conclusion that Mr. Vazquez-Claudio's symptoms were not indicative of occupational and social impairment with deficiencies in most areas to which the 70 percent disability requirement refers.

In sum, to the extent the Veterans Court's opinion could be read to state that "deficiencies in most areas" is irrelevant to assessment of entitlement to a 70 percent disability rating, we agree with Mr. Vazquez-Claudio that

such an interpretation misreads the regulation. Entitlement to a 70 percent disability rating requires sufficient symptoms of the kind listed in the 70 percent requirements, or others of similar severity, frequency or duration, that cause occupational and social impairment with deficiencies in most areas such as those enumerated in the regulation. The 70 percent disability rating regulation contemplates initial assessment of the symptoms displayed by the veteran, and if they are of the kind enumerated in the regulation, an assessment of whether those symptoms result in occupational and social impairment with deficiencies in most areas. In this case, the Board did not ignore the issue of whether Mr. Vazquez-Claudio's symptoms qualified under the 70 percent rating requirements (most of his symptoms did not), nor did it fail to consider the level of impairment those symptoms caused in the relevant areas. Therefore, because the Board correctly applied the 70 percent rating regulation, the misreading of the regulation by the Veterans Court is harmless error, and we affirm.

## CONCLUSION

For the reasons set forth above, we affirm the Veterans Court's decision that Mr. Vazquez-Claudio is entitled to a disability rating no greater than 50 percent.

## **AFFIRMED**

### COSTS

No costs.