Citation Nr: 1744000 
Decision Date: 09/18/17 Archive Date: 10/10/17

DOCKET NO. 13-22 060A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUE

Entitlement to an initial rating in excess of 30 percent for post-traumatic stress disorder (PTSD). 


REPRESENTATION

Appellant represented by: Texas Veterans Commission


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

R. Ballard Jr., Associate Counsel

INTRODUCTION

The appellant is a Veteran who served on active duty from May 1971 to May 1973.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an August 2008 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Houston, Texas which denied service connection for PTSD. In a July 2010 rating decision, a Decision Review Officer (DRO) granted service connection for PTSD and assigned a 30 percent rating, effective April 15, 2008.

In December 2015, a hearing was held before the undersigned Veteran's Law Judge. A transcript of said hearing is associated with the Veteran's record. At the hearing, the Veteran granted a waiver of RO initial consideration evidence submitted during or subsequent to the hearing. See 38 C.F.R. § 20.1304. The case was remanded by the Board in May 2016.


FINDING OF FACT

The Veteran's PTSD manifested in symptoms of severity most nearly approximating occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks. The Veteran's PTSD has not been shown to have manifested in severity of disability more nearly approximating occupational and social impairment with reduced reliability and productivity, nor occupational and social impairment with deficiencies in most areas (such as work, school, family relations, judgment, thinking, or mood), nor total occupational and social impairment.



CONCLUSION OF LAW

The criteria for a schedular rating for PTSD in excess of 30 percent disabling have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107, 5110 (West 2014); 38 C.F.R. §§ 3.102, 3.400(o)(2), 4.130, Diagnostic Code 9411 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) describes VA's duty to notify and assist claimants in substantiating a claim for VA benefits. With respect to the appellant's claims herein, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2016); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

This claim arises from the Veteran's disagreement with the rating assigned in connection with the grant of service connection for PTSD. The courts have held, and VA's General Counsel has agreed, that where an underlying claim for service connection has been granted and there is disagreement as to "downstream" questions, such as a disability rating, the claim has been substantiated and there is no need to provide additional VCAA notice. Hartman v. Nicholson, 483 F.3d 1311, 1314-15 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112, 116-17 (2007); VAOPGCPREC 8-2003 (2003); Goodwin v. Peake, 22 Vet. App. 128, 137 (2008). 

The VCAA also requires VA to make reasonable efforts to help a claimant obtain evidence necessary to substantiate his claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c) and (d). This "duty to assist" contemplates that VA will help a claimant obtain records relevant to his claim, whether or not the records are in federal custody, and that VA will provide a medical examination or obtain an opinion when necessary to make a decision on the claim. 38 C.F.R. § 3.159(c)(4). 

In this case, VA obtained all service treatment, military personnel, and VA treatment records identified by the Veteran. This matter was previously before the Board in May 2016 and was remanded for further development. The remand directives instructed the RO to obtain any updated records of all VA and non-VA evaluations and treatment the Veteran had received for his PTSD. As a result, VA treatment records from November 2007 through June 2016 were obtained and associated with the records. Furthermore, on June 6, 2016, VA sent the Veteran a "Duty to Assist" letter asking him to submit additional evidence to support his appeal for an initial rating in excess of 30 percent for PTSD. However, VA never received the completed VA Form 21-4142 (Authorization and Consent to Release Information), nor did VA receive any additional evidence from the Veteran.

The remand directives also instructed the RO to provide the Veteran with a new VA examination. The duty to assist also includes providing a medical examination or obtaining a medical opinion when necessary to make a decision on a claim, as defined by law. See 38 C.F.R. § 3.159(c)(4). The Veteran was provided with a VA examination in July 2016 to determine the current severity of his service-connected PTSD. 

The Board finds that there has been substantial compliance with the directives of its remand. Stegall v. West, 11 Vet. App. 268 (1998). 

Legal Criteria

Disability ratings are determined by comparing a Veteran's symptomatology during the pertinent period on appeal with criteria set forth in VA's Schedule for Rating Disabilities, which is based on average impairment in earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. When a question arises as to which of two ratings applies under a particular diagnostic code, the higher rating is assigned if the disability more closely approximates the criteria for the higher rating. 38 C.F.R. § 4.7. Otherwise, the lower rating will be assigned. Id. After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. Id. § 4.3.

In determining whether a claimed benefit is warranted, VA must determine whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether the preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C.A. § 5107 (a); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). Moreover, an appeal from the initial assignment of a disability rating, such as the appeal in this case, requires consideration of the entire time period involved, and contemplates staged ratings where warranted.

Where an award of service connection for a disability has been granted and the assignment of an initial evaluation for that disability is disputed, separate (staged) ratings may be assigned for separate periods of time based on the facts found. In other words, the ratings may be staged. Fenderson v. West, 12 Vet. App. 119 (1999). Here, however, as shown below, the evidence warrants a uniform 30 percent rating.

The Veteran's PTSD is rated under 38 C.F.R. § 4.130, DC 9411. All psychiatric disabilities are evaluated under a general rating formula for mental disorders. Evaluation under § 4.130 is symptom-driven, meaning that symptomatology should be the fact-finder's primary focus when deciding entitlement to a given disability rating under that regulation. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 116-17 (Fed. Cir. 2013). In Vazquez-Claudio, the United States Court of Appeals for the Federal Circuit explained that the frequency, severity and duration of the symptoms also play an important role in determining the rating. Id. at 117. When determining the appropriate disability rating to assign, the Board's primary consideration is a veteran's symptoms, but it must also make findings as to how those symptoms impact a veteran's occupational and social impairment. Id.; Mauerhan v. Principi, 16 Vet. App. 436, (2002). Significantly, however, the list of symptoms under the rating criteria are meant to be examples of symptoms that would warrant the rating, but are not meant to be exhaustive, and the Board need not find all or even some of the symptoms to award a specific rating. 38 C.F.R. § 4.21; Mauerhan v. Principi, 16 Vet. App. 436, 442-43 (2002). If the evidence shows that the Veteran suffers symptoms listed in the rating criteria or symptoms of similar severity, frequency, and duration, that cause occupational or social impairment equivalent to what would be caused by the symptoms listed in the criteria for a particular rating, the appropriate equivalent rating will be assigned. Mauerhan, 16 Vet. App. at 443; see also Vazquez-Claudio, 713 F.3d at 117. Nevertheless, all ratings in the general rating formula are also associated with objectively observable symptomatology and the plain language of the regulation makes it clear that the veteran's impairment must be "due to" those symptoms; a veteran may only qualify for a given disability rating by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration. Id.

The Board notes that, effective August 4, 2014, VA amended the portion of its Schedule for Rating Disabilities dealing with mental disorders, including 38 C.F.R. § 4.130, to remove outdated references to the 4th edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) and replace them with references to the recently updated Fifth Edition (DSM-5). See Final Rule, Schedule for Rating Disabilities - Mental Disorders and Definition of Psychosis for Certain VA Purposes, 80 Fed. Reg. 14308 (Mar. 19, 2015). As the provisions of this amendment were intended to apply to claims that had been certified for appeal to the Board after August 4, 2014, see id., and this case was certified on August 1, 2014, the Board will not consider the update binding in this decision.

As stated, PTSD is rated by applying the criteria in 38 C.F.R. § 4.130, Diagnostic Code (DC) 9411. The Veteran's PTSD is currently rated at 30 percent disabling. The VA Schedule rating formula for mental disorders reads in pertinent part as follows:

30 percent- Occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often) chronic sleep impairment., mild memory loss (such as forgetting names, directions, recent events). 

50 percent - Occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships.

70 percent - Occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); inability to establish and maintain effective relationships).

100 percent rating (the maximum scheduler rating) - Total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation or own name.

38 C.F.R. § 4.130, Diagnostic Code 9411 (2016).

When evaluating a mental disorder, the rating agency shall consider the frequency, severity, and duration of psychiatric symptoms, length of remissions, and the Veteran's capacity for adjustment during periods of remission. 38 C.F.R. § 4.126(a). The rating agency shall assign a rating based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner's assessment of the level of disability at the moment of the examination. Id. However, when evaluating the level of disability from a mental disorder, the rating agency will consider the extent of social impairment, but shall not assign a rating solely on the basis of social impairment. 38 C.F.R. § 4.126(b).

One factor which may be considered is the Global Assessment of Functioning (GAF) score, which is a scale reflecting the "psychological, social, and occupational functioning in a hypothetical continuum of mental health-illness." Carpenter v. Brown, 8 Vet. App. 240, 242 (1995) (citing Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV)); see also Richard v. Brown, 9 Vet. App. 266 (1996); Carpenter v. Brown, 8 Vet. App. 240, 242 (1995). GAF scores ranging from 61 to 70 reflect some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, and having some meaningful interpersonal relationships. A score of 51 to 60 indicates moderate symptoms (e.g , flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peer or coworkers). A GAF score of 41 to 50 indicates serious symptoms and serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep job), while a GAF score of 31 to 40 indicates major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed, avoids friends, neglects family, and is unable to work). See DSM-IV. 

Factual Background

The Board has reviewed all of the evidence in the Veteran's claims file, with an emphasis on the evidence pertinent to the issue on appeal. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the extensive evidence of record. Indeed, the Federal Circuit has held that the Board must review the entire record, but does not have to discuss each piece of evidence. Gonzalez v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Therefore, the Board will summarize the relevant evidence where appropriate, and the Board's analysis below will focus specifically on what the evidence shows, or fails to show, as to the claim.

The Veteran has been receiving treatment for his PTSD at the VA medical center (VAMC) in Houston, Texas since June 2007. 

In June 2007, the Veteran was afforded a VA medical examination. During that exam, he denied any suicidal ideations and/or attempts. He reported no symptoms of consistent panic or worrying too much. He did report having dreams about killing, regarding his service. He also reported hearing different noises that cause him to look around as well as voices that say "come here, I'm going to get you, I'm going to see you." He stated that these occur when he is both asleep and awake and have been going on intermittently for years. 

VAMC Houston, Texas medical treatment records include a report of suicidal thoughts when his mood was depressed in April 2008. In September 2008, the Veteran reported difficulty falling or staying asleep, difficulty concentrating, and hypervigilance. His PTSD was also manifested via a GAF score of 55, indicating moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks). 

In 2011, the Veteran submitted several statements from family members to support his claim. In January 2011, the Veteran's son, S. M., stated that he has observed the Veteran have panic attacks and nightmares in which he sometimes yells, kicks, and punches. S.M. stated that the nightmares occur more than once a week. 

That same month, the Veteran's sister in law, L. C., submitted a statement saying that she observed the Veteran usually seeming very depressed and that he rarely laughed. 

In January and December of 2011, L. P. submitted statements saying that she had lived with the Veteran for 10 years and had also observed the him having nightmares (where he fights in his sleep), which happen on a daily basis, and panic attacks. She also stated that he forgets where he puts things. 

In June 2012, the Veteran reported waking up at night. In December 2012, the Veteran's PTSD was manifested by avoiding socializing with his co-workers. In August 2013, the Veteran again reported being anxious and/or hypervigilant at night. In November 2013, the Veteran reported that he had panic attacks. In April 2014, the Veteran again reported nightmares, and stated that he had no suicidal or homicidal ideations. 

As stated above, the Veteran was afforded a hearing before the undersigned Veteran's Law Judge in December 2015. During the hearing, the Veteran testified that his PTSD affected his job because "he couldn't concentrate and was missing work... things were not getting done right in [his] job." He went on to state "I start thinking about a lot of things when I'm working and it affects my job... so I have to go and talk to my boss and let him know that I can't work... because I'm there and all of the sudden, my mind starts thinking about different thing." Finally, the Veteran indicated that he would submit a letter from his employer regarding these issues.

Finally, January 2016 VAMC records stated that on the day the Veteran was seen, his rooming and hygiene were adequate and his behavior was pleasant and cooperative, with good eye contact. There was no psychomotor agitation or retardation and there were no abnormal involuntary movements noted. The records also note that his speech was spontaneous, with regular rate, rhythm, volume, and prosody and his mood was "fine" and affect was euthymic, of normal range and intensity and congruent with mood. He again denied suicidal ideations, and the records note that there had been no previous suicide attempts.

In accordance with the Board's May 2016 remand directives, the Veteran was afforded a second VA examination in May 2016 to determine the severity of his service-connected PTSD. During the examination, the Veteran again reported waking in the middle of the night, nightmares, anxiety, and problems with concentration. He also denied any suicidal or homicidal ideations and that he is comforted by rubbing holy water on himself when stressed. Finally, he reported that he retired in May of 2016, after working in a warehouse for 43 years because of his "mental health." He stated that his "mind was getting away from [him], thoughts would come to mind. They would come and go and [he] was missing work." He reported he missed work because he "could not function." The examiner found that the Veteran was oriented to time, place and person, and dress and grooming were appropriate and within normal limits. The examiner concluded that the Veteran does not appear to meet full criteria for PTSD at this time and that he had occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or; symptoms controlled by medication. 

Analysis 

The Veteran filed a claim for a rating in excess of 30 percent in August 2010. His disability was rated 30 percent disabling through the rating period for consideration in this appeal. Based on a review of the evidence of record, the Board finds that an increased rating is not warranted for any portion of the period on appeal.

In McGrath, the Court held that when evidence is created it is irrelevant compared to when the Veteran was actually experiencing the symptoms. McGrath v. Gober, 14 Vet. App. 28 (2000). Thus, the Board will consider whether the evidence of record suggests that the severity of the Veteran's PTSD symptoms increased sometime prior to the date of the examination reports noting pertinent findings. The Board has also considered the history of the Veteran's disability prior to the rating period on appeal to see if it supports a higher rating during the rating period on appeal.

The Board finds that a rating in excess of 30 percent for PTSD is not warranted for any period on appeal. The severity of psychiatric impairment shown does not more nearly approximates the level of occupational and social impairment with reduced reliability and productivity such as that related to the 50 percent rating, or an even higher rating. L.P. only points out that the Veteran only occasionally forgets where he puts things which does not fit within the 50 percent or higher rating criteria. The 2016 VA examiner concluded that he Veteran may not even currently meet the criteria for PTSD and merely had occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress. The examiner did not select language equating with symptoms for the 50 percent, or higher, rating criteria. 

A higher schedular rating of 50 percent is not warranted because the Veteran's symptoms and overall level of impairment did not include those symptoms noted under this level of impairment or like symptoms that would exhibit the frequency, severity, and duration required for such a rating. See Vazquez-Claudio v. Shinseki, 713 F.3d 112, 117 (Fed. Cir. 2013) ("[A] veteran may only qualify for a given disability rating under § 4.130 by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration."). The shown level of impairment did not more nearly approximate occupational and social impairment with reduced reliability and productivity as contemplated by the criteria for the next-higher rating of 50 percent. The record does not indicate that the Veteran has panic attacks more than once a week or difficulty understanding complex commands. As previously stated, there is no evidence to show that he has anything beyond mild memory loss; he does not forget to complete tasks nor is he only able to retain highly learned data. Also, the only indication of difficulty in establishing or maintaining work and social relationships is one statement that the Veteran made in December 2012, in which he said that he avoided socializing with his co-workers. The Board finds that this statement does not rise to the level of indicating an actual difficulty forming relationships. 

The Veteran's PTSD is not reflective of more than occupational impairment with occasional decrease in work efficiency. Although he indicated that he had some problems at work due to mental health, and that he left his job after 43 years due to "mental health" the fact remains that he was able to sustain an occupation for 43 years. Further, he indicated that he retired in 2016. In addition, VA examiners have repeatedly found that his PTSD caused only occasional decrease in work efficiency. For these reasons, too, referral for consideration of extraschedular TDIU is not warranted.

Similarly, the Veteran does not meet the criteria necessary for a 70 percent disability rating. The Veteran does not have deficiencies in most areas (family relations, judgment, thinking, etc.). His report of suicidal thoughts when his mood was depressed in 2008 does not reflect that a higher rating is warranted as such symptoms are not of a frequency, duration, and severity to suggest a higher rating is warranted. The Veteran denied suicidal ideations prior to his 2008 report and afterwards in the remainder of the record. During his 2016 VA examination, he reported that he did not attempt suicide when he was thinking of it in 2007, and he denied suicide attempt since 2007. Further, the 2016 examiner specifically noted that the Veteran did not report any auditory, tactile, or visual hallucinations; his thoughts were logical; and he did not have content indicative delusional thinking. The Board does note that the Veteran's. There is also no indication that the Veteran's panic attacks occur more than once week. Furthermore, the VA clinicians indicated, on more than one occasion, that the Veteran's dress and grooming was appropriate and he did not neglect his physical appearance or hygiene.

Finally, a higher schedular rating of 100 percent is not warranted because the Veteran's symptoms and overall level of impairment did not more nearly approximate the criteria for such a rating. Specifically, the Veteran did not suffer from persistent delusions or hallucinations. The only time the Veteran reported any auditory hallucinations was in June 2007, after which he never reported this symptom again. Thus, the Board finds that this symptom is not "persistent," as is required for a 100 percent rating. The Veteran also does not display inappropriate behavior, nor was in persistent danger of hurting himself. Also, as noted by the 2016 VA examiner, the Veteran had not experienced disorientation to time or place. 

Not only had the Veteran not exhibited many of the symptoms listed as examples for a rating of 50, 70, or 100 percent, but his psychiatric symptoms are not otherwise shown to have been of similar severity, frequency, and duration as contemplated by the criteria for ratings in excess of 30 percent. See Vazquez-Claudio, 713 F.3d at 118. The Veteran did not exhibit symptoms of such severity and/or frequency to cause deficiencies in most areas and/or total occupational and social impairment. 


Therefore, the Board has determined that the Veteran's PTSD has manifested to the level of a 30 percent schedular rating, and no higher, during the appeal period. The Veteran's appeal for a higher initial rating is denied.

As the preponderance of the evidence is against the claim, the benefit of the doubt rule does not provide a basis for a grant of this claim on appeal. See 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49, 54-56 (1990).


ORDER

Entitlement to an increased rating in excess of 30 percent for PTSD is denied.




____________________________________________
M. C. Graham
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs