﻿Citation Nr: AXXXXXXXX
Decision Date: 08/29/19 Archive Date: 08/28/19

DOCKET NO. 190725-14134
DATE: August 29, 2019

ORDER

Entitlement to a rating of 70 percent, but no higher, for unspecified depressive disorder is granted throughout the appeal period.

FINDING OF FACT

Resolving reasonable doubt in the Veteran’s favor, the severity, frequency, and duration of his psychiatric symptoms most closely approximated occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood (contemplated by a 70 percent rating) throughout the appeal period.

CONCLUSION OF LAW

The criteria for entitlement to a rating of 70 percent, but no higher, for unspecified depressive disorder have been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.126, 4.130, Diagnostic Code (DC) 9435, General Rating Formula for Mental Disorders (General Formula) (2018). 

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran had qualifying service from April 1953 to April 1955 and May 1955 to May 1973.

In a March 2019 Rating Decision, the agency of original jurisdiction (AOJ) granted entitlement to service connection for unspecified depressive disorder and assigned a 30 percent rating, effective September 28, 2008. Through a July 2019 Notice of Disagreement (NOD), the Veteran elected the direct review docket, which only permits the Board to review the evidence of record at the time of the March 2019 Rating Decision. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)). 

Preliminarily, the issue of entitlement to a total disability rating based on unemployability (TDIU) is not currently before the Board. In August 2017, the Board dismissed the issues of entitlement to service connection for posttraumatic stress disorder (PTSD) and entitlement to TDIU because the Veteran withdrew his appeals in a July 2016 Statement. In an August 2017 Motion for Reconsideration, the Veteran stated that he only wanted to withdraw the entitlement to TDIU claim, but that his representative accidently withdrew both the entitlement to TDIU and entitlement to service connection for PTSD claims. In January 2018, the Board dismissed the Motion for Reconsideration because the Veteran withdrew it in December 2017. In April 2018, the U.S. Court of Appeals for Veterans Claims (Court) issued a Joint Motion for Remand regarding entitlement to service connection for PTSD and entitlement to TDIU because the Board failed to provide adequate reasons and bases in the August 2017 decision. In October 2018, the Board again dismissed TDIU because the Veteran explicitly withdrew his appeal. Crucially, to date, the Veteran has not appealed the October 2018 Board decision to the Court; thus, the TDIU issue is not currently before the Board.

1. Increased Rating for Unspecified Depressive Disorder 

In determining the severity of a disability, the Board applies the criteria set forth in the Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. If the disability more closely approximates the criteria for the higher of two ratings, the higher rating is assigned. 38 C.F.R. § 4.7. Under the General Formula, the Board must conduct a “holistic analysis” that considers all associated symptoms, regardless of whether they are listed as criteria, and determine whether any unlisted symptoms are similar in severity, frequency, and duration to the listed symptoms associated with specific disability percentages. Bankhead v. Shulkin, 29 Vet. App. 10, 22 (2017); 38 C.F.R. § 4.130. Then, the Board must determine whether the associated symptoms, both listed and unlisted, caused the level of impairment required for a higher disability rating. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 114-118 (Fed. Cir. 2013). 

A 30 percent rating is assigned for occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal) due to such symptoms as: depressed mood; anxiety; suspiciousness; panic attacks (weekly or less often); chronic sleep impairment; or mild memory loss (such as forgetting names, directions, recent events). 38 C.F.R. § 4.130, DC 9435, General Formula. A 50 percent rating is assigned for occupational and social impairment with reduced reliability and productivity due to symptoms such as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; or difficulty in establishing and maintaining effective work and social relationships. Id. A 70 percent rating is assigned for occupational and social impairment with deficiencies in most areas (such as work, school, family relations, judgment, thinking, or mood) due to symptoms such as: suicidal ideation; obsessional rituals which interfere with routine activities; intermittently illogical, obscure, or irrelevant speech; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); or inability to establish and maintain effective relationships. Id. A 100 percent rating is assigned for total occupational and social impairment due to symptoms such as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; or memory loss for names of close relatives, own occupation or own name. Id.

The Veteran’s unspecified depressive disorder has been rated at 30 percent since September 28, 2008. See March 2019 Codesheet; 38 C.F.R. § 4.130, DC 9435, General Formula. The Veteran contends that his psychiatric symptoms result in total occupational and social impairment, warranting a 100 percent rating; however, based on the evidence discussed below, the Board finds that, after resolving reasonable doubt in the Veteran’s favor, the severity, frequency, and duration of his psychiatric symptoms most closely approximated occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood (contemplated by a 70 percent rating) throughout the appeal period. See February 2019 Brief (seeking a 100 percent rating); July 2019 NOD (seeking a 100 percent rating).

A September 2008 record from Central Texas VA Medical Center (VAMC) documented the Veteran’s reports of depression, fair mood, nightmares, and sleeping problems; and he also reported being a volunteer for Meals on Wheels. The mental status examination revealed: alert and oriented; appropriately dressed and groomed; pleasant and cooperative; logical and coherent thoughts; no suicidal or homicidal ideation; fair mood; and euthymic affect. A January 2009 record from Central Texas VAMC documented the Veteran’s reports of feeling better, improved sleep and nightmares with medication, and feeling a little depressed. The mental status examination revealed: alert and oriented; appropriately dressed and groomed; very pleasant and cooperative; logical and coherent thoughts; no suicidal or homicidal ideations; fair mood; and mildly dysphoric affect. The provider also noted that the Veteran had good social support. An April 2009 record from Central Texas VAMC documented the Veteran’s reports of depression stable with medication, sleep improved with medication, fair interest, occasional feelings of hopelessness and worthlessness, poor energy, fair concentration, no suicidal thoughts, stable anxiety, no overt psychotic symptoms, and fair memory; he also reported that he was going through a divorce from a five-year marriage and was coping with the divorce well despite having a little support system and not having a relationship with his children. The mental status examination revealed: alert and oriented; appropriately dressed and groomed; very pleasant and cooperative; logical and coherent thoughts; no suicidal or homicidal ideation; fair mood; and mildly dysphoric affect.

During the August 2009 VA mental disorders examination, the Veteran reported that he: was married four times (lasting 3 years, 25 years, 18 years, and 2 years); had multiple children; had good relationships with all his wives and children; was looking for a girlfriend; had a few friends and played cards with them; went to church rarely; was busy with his friends; had sleep problems and nightmares; had low energy and loss of interest in sex; was self-isolating; enjoyed things less than before; had panic feelings and attacks; had difficulty remembering things; and was retired since 2002 because he could not hear well and was forgetting things. The mental status examination revealed: appropriately dressed and groomed; cooperative, friendly, relaxed attitude; unremarkable psychomotor activity; clear and spontaneous speech; normal affect; oriented to person, time, place; unremarkable thought process and content; no delusions; judgement described as understands outcome of behavior; insight into problems; no hallucinations; no inappropriate behavior; no homicidal or suicidal thoughts; good impulse control; no episodes of violence; ability to maintain minimum personal hygiene; and normal memory.

A January 2010 record from Central Texas VAMC documented the Veteran’s reports of completing his divorce, living alone, feeling dysphoric and lonely because of problems with his foot, no suicidal ideation, sleeping okay most of the time, reading books, talking to his son, going to Veterans of Foreign Wars (VFW) occasionally, volunteering with Meals on Wheels occasionally, no crying spells, and no despondency. The provider noted that the Veteran did not portray deep depression, had no overt thought disorder, had euthymic mood, smiled spontaneously, had no memory deficits, was not psychotic, and was not suicidal. In April 2010 and July 2010 Correspondences, the Veteran reported that he got divorced due to sleep difficulties and nightmares. An August 2010 record from Central Texas VAMC documented findings of no acute distress, no thought disorder, mild depression, no psychosis, and no suicidal ideation; the provider noted that the main problem seemed to be loneliness. A September 2010 record from Central Texas VAMC documented the Veteran’s reports of seeing vague shadows in front of his eyes once in a while, crying spells, sleeping problems, nightmares, panic attacks, fleeting suicidal ideation, depression, insomnia, avoidance, no command hallucinations, and a few friends who come to chat. In an October 2010 Correspondence, the Veteran reiterated that he got divorced due to sleep difficulties and nightmares.

During the January 2011 VA initial posttraumatic stress disorder (PTSD) examination, the Veteran reported depressed mood, panic feelings, decreased energy, loss of interest in activities (particularly social activities), four divorces, living alone, some contact with his adult children, some close friends (although he did not visit with them as much during the past two years), multiple retirements (20 years of military service, 10 years as an insurance agent, 5 years owning a grocery store, and 11 years working in federal civil service). The provider found: functioning unimpaired; symptoms mild and chronic since 2002; and occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks due to psychiatric symptoms (reduced energy, loss of interest, poor motivation), but with generally satisfactory functioning (routine behavior, self-care, and conversation normal). In a February 2011 Correspondence, the Veteran reiterated that he got divorced due to sleep difficulties and nightmares. A February 2011 record from Central Texas VAMC documented the Veteran’s reports of depression, avoidance (movies), re-experiencing (dreams), irritability, four divorces due to his behavior, and suicidal ideation without plan or intent. The provider noted that the Veteran arrived on-time, was adequately groomed and dressed, appeared alert and oriented, had depressed mood and congruent affect, had logical and goal-directed thought process without evidence of disturbance or psychosis. 

A March 2011 record from Central Texas VAMC documented the Veteran’s reports of past failure, loss of pleasure, punishment feelings, crying, loss of interest, concentration difficulty, tiredness or fatigue, loss of interest in sex, sadness, guilty feelings, self-dislike, self-criticalness, indecisiveness, worthlessness, loss of energy, irritability, changes in appetite (less), pessimism, suicidal thoughts or wishes, agitation, changes in sleeping pattern (less), poor concentration, loss of interest, repetitive thoughts, lowered self-esteem, feelings of guilt, avoidance of others, angry outbursts, memory problems, avoidance of responsibilities, frequently dissatisfied, weight gain, panic attacks, suicidal thoughts, self-injury, health/physical problems, persistent pain, feeling hopeless, feelings of helplessness, feeling out of control, problems with sexual intimacy, difficulty making decisions, loss of confidence, causing harm to others, compulsive behaviors, engaging in risky behaviors, feelings of regret, grieving and sense of loss, feeling as if individuals were following or observing him, seeing shadows or clouds in his eyes at times, nightmares about every night, and sleep problems. 

A May 2011 record from Central Texas VAMC found that the Veteran: arrived on-time, was adequately groomed and dressed, appeared alert and oriented, had good mood and congruent affect, had logical and goal-directed thoughts, had slow speech (unremarkable for his age), showed no obvious evidence of significant disturbance in formal thought processes, and showed no evidence of psychosis. The Veteran admitted suicidal ideation, but denied plan or intent and was deemed low risk for self-harm. A November 2011 record from Central Texas VAMC revealed: depression, sleep problems, cognitive disorder, limited social activities (sees son every few months), occasional problems with forgetfulness (not caused serious problems), casually dressed, cooperative, fair eye contact, fair mood, euthymic affect, normal speech, no gross motor abnormalities, logical and goal-directed thoughts with intact associations, no homicidal ideation, no suicidal ideation, no psychotic symptoms, fair insight, fair judgment, and oriented. A November 2011 record from Central Texas VAMC documented that the Veteran had no significant depressive symptoms at that time. An August 2012 record from Central Texas VAMC revealed: occasional moodiness but no serious mental health symptoms, continued difficulty sleeping, casually dressed, cooperative, fair eye contact, fair mood, euthymic affect, normal speech, no gross motor abnormalities, logical and goal-directed thoughts with intact associations, no homicidal ideation, no suicidal ideation, no psychotic symptoms, somewhat limited insight, and somewhat limited judgment.

An October 2012 record from Central Texas VAMC revealed no auditory or visual hallucinations and no suicidal ideation. A November 2012 record from Central Texas VAMC revealed: sleep difficulties, casually dressed, cooperative, fair eye contact, fair mood, euthymic affect, normal speech, logical and goal-directed thoughts with intact associations, no homicidal ideation, no suicidal ideation, no psychotic symptoms, fair insight, and fair judgment. A February 2013 record from Central Texas VAMC revealed: casually dressed, cooperative, fair eye contact, fair mood, euthymic affect, normal speech, no gross motor abnormalities, logical and goal-directed thoughts with intact associations, no homicidal ideation, no suicidal ideation, no psychotic symptoms, fair insight, and fair judgment. An April 2013 record from Central Texas VAMC revealed: mood problems, sleep difficulty (mild to moderate), casually dressed, cooperative, and fair eye contact, fair mood, euthymic affect, normal speech, no gross motor abnormalities, logical and goal-directed thoughts with intact associations, no homicidal ideation, no suicidal ideation, no psychotic symptoms, fair insight, and fair judgment. In a June 2013 Correspondence, the Veteran reiterated that he got divorced due to sleep difficulties and nightmares. A July 2013 record from Central Texas VAMC revealed: mood problems, sleep difficulty (mild to moderate), casually dressed, cooperative, fair eye contact, fair mood, euthymic affect, normal speech, no gross motor abnormalities, logical and goal-directed thoughts with intact associations, no homicidal ideation, no suicidal ideation, no psychotic symptoms, fair insight, and fair judgment.

A May 2014 record from Central Texas VAMC revealed: depression, sleep problems, a couple of friends with whom the Veteran visits, irritability, no hallucinations, no delusions, no psychosis, no suicidal ideation, and no homicidal ideation. In a July 2014 Correspondence, the Veteran reiterated that he got divorced due to sleep difficulties and nightmares. A July 2014 record from Central Texas VAMC revealed: casually dressed, cooperative, fair eye contact, so-so mood, appropriate affect, normal speech, no psychomotor abnormalities, logical and goal-directed thoughts with intact associations, no homicidal ideation, no suicidal ideation, no psychotic symptoms, fair insight, fair judgment, alert and oriented, memory within normal limits. A December 2014 record from Central Texas VAMC revealed: depression, sleep problems, no cognitive problems, no irritability, not good mood, fair energy, fair concentration, occasional difficulty controlling self (worries, palpitations, trembling, sweating, shaking), no hallucinations, no delusions, no suicidal ideation, no homicidal ideation, low risk of self-harm, divorced five times, and multiple children. In a December 2015 Correspondence, the Veteran reiterated that he got divorced due to sleep difficulties and nightmares. An April 2016 record from Central Texas VAMC revealed: so-so mood without sadness, good appetite, no weight changes, passive suicidal ideation without intent or plan, no homicidal ideation, concerns about the VA claims process, nightmares, avoidance (movies), no auditory or visual hallucinations, did not appear to be responding to internal stimuli, no delusions, and good social support.

A July 2016 record from Central Texas VAMC revealed: fluctuating mood, nightmares, suicidal thoughts once per week since 2002 (gave gun to son one year ago after seriously considering suicide), no current plan of self-harm, sleeping difficulty, variable appetite, stable weight, mildly-reduced energy, variable concentration, mild memory problems (problems remembering where he puts things), started hearing voices 15-20 years ago (voice during day and night telling him to do things such as open the door or move that table, but 5 months ago it told him to kill himself; he hears many voices and they only tell him things but do not converse; sometimes voices tell him to move away), sometimes during the day he thinks he sees a person walking around the room (nobody is there when he looks), at night sometimes he thinks someone is grabbing him, lives alone, has several friends but sees them infrequently, moderate risk of self-harm (increased risk of suicide but not acutely dangerous to self), lack of social support and social environment problems, and poor thought content (auditory, visual, and tactile hallucinations; infrequent passive suicidal ideation). The provider initiated a prescription for risperidone for psychosis. 

An August 2016 record from Central Texas VAMC revealed: sometimes feeling a little bit down, sometimes feeling worthless with passive suicidal ideation, lives alone, no friends or family around to help him, no auditory hallucinations, no command hallucinations, no visual hallucinations, low risk of self-harm, casually dressed and neatly groomed, good eye contact, decreased psychomotor activity, normal speech, moderately depressed mood, appropriate and full affect, alert and oriented, memory impaired for immediate recall and at two minutes, intact concentration, fair insight, fair judgement, normal thought process, poor thought content (auditory, visual, and tactile hallucinations; infrequent, passive suicidal ideation), no homicidal ideation, problems in visuospatial/executive functioning, problems with immediate and delayed recall, and problems with attention span and language. A September 2016 record from Central Texas VAMC revealed that, although being started on risperidone in July 2016 due to hearing voices and progressive psychiatric symptoms, providers ordered that the Veteran be weaned off risperidone due to dermatological problems. A September 2017 record from Central Texas VAMC revealed: mood fluctuations; rough week because unable to contact family in Puerto Rico; once in a while seeing something that is not there and getting a little confused; sometimes unable to find things he is looking for; no obvious auditory or visual hallucinations; memory impaired for immediate recall and at two minutes; problems in visuospatial/executive functioning; problems with immediate and delayed recall; problems with attention span and language; little interest or pleasure in doing things nearly every day; and feeling tired or having little energy several days. The provider discontinued the prescription for risperidone because it was not indicated (no obvious indication for antipsychotic).

A June 2018 record from Central Texas VAMC revealed: mood and anxiety controlled and stable; not sleeping well; nightmares once in a while; no hopelessness or helplessness; no panic attacks; no mania or hypomania; no psychosis or paranoia; no thoughts of self-harm; lives alone; no friends in area; no prior suicide attempts or mental health hospitalizations; memory impaired for immediate recall and at two minutes; problems in visuospatial/executive functioning; problems with immediate and delayed recall; problems with attention span and language; good mood; euthymic, restricted affect; normal speech; linear and goal-directed thought process; no suicidal ideation; no homicidal ideation; no auditory or visual hallucinations; fair insight and judgement; no current thoughts of suicide or self-harm; no prior history of suicidal ideas or attempts; and no significant risk for self-harm. An August 2018 record from Central Texas VAMC revealed: frequent nightmares; no hopelessness; no panic attacks; no mania or hypomania; no psychosis or paranoia; no thoughts of self-harm; lives alone; when lonely, goes out to watch people; no friends in area; no prior suicide attempts or mental health hospitalizations; good hygiene and grooming; good eye contact; cooperative and reasonable behavior; no involuntary movements; alert and oriented; normal speech; euthymic mood; normal and full affect; denied auditory and visual hallucinations; linear, organized, future/goal-oriented thought with tight associations; relevant thought content; no suicidal ideation; no homicidal ideation; good insight; good judgment; intact memory; no gross deficits in fund of knowledge or memory; good impulse control; low risk of self-harm; and lack of social support.

A September 2018 private psychiatric assessment by Dr. MC revealed: profound problems with classic neurovegetative symptoms of depression, anhedonia, hopelessness, helplessness, despair, decreased focus and concentration, sleep disturbance, and extensive irritability preventing gainful employment since at least 2002; severe symptoms of depression, anxiety, altered thought processing, and overall severe dysfunction; social withdrawal and isolation; great sense of despair; persistent thoughts of suicide and often has plans to shoot himself; profound insomnia with nightmares so severe that they interfered with his marriages; constant intrusive memories; disturbing periods of dissociation; reclusiveness; physiological reactivity to cues associated with service marked by tachycardia and diaphoresis; highly avoidant of combat-related memories, thoughts, or feelings; goes to extraordinary lengths to remove himself from societal interactions to avoid being triggered; extensive self-loathing, hatred, and negativistic beliefs about himself; participates in no activities, does nothing pleasurable, has no positive emotions, and is removed from others; longterm irritability, recklessness, hypervigilance, and exaggerated startle response; steadily-worsening problems with concentration; pervasive depressive symptomatology; severe suicidality; psychomotor retardation; indecisiveness; sense of worthlessness and inappropriate guilt that borders on delusional; fatigue and loss of energy; and cognitive dysfunction due to psychiatric symptoms. The provider noted that the Veteran has had these symptoms for decades. The mental status evaluation revealed: flat speech; obvious speech latency; depressed mood; affect profoundly restricted, flattened, and contained within dysphoric range; thought content positive for suicidal ideation with intermittent plan and intent; incapable of pure linear and logical thought; loose associations; paucity of thought; and diminished focus and concentration. The provider opined that the Veteran’s psychiatric symptoms had precluded employment since at least 2002 and caused significant problems with familial relationships (with each of his five marriages ending due to the Veteran’s progressive mental health symptoms). 

An October 2018 record from Central Texas VAMC revealed: frequent nightmares; no hopelessness; no panic attacks; no mania or hypomania; no psychosis or paranoia; no thoughts of self-harm; no friends in area; no prior suicide attempts or mental health hospitalizations; socialization at the Vet Center and the local VFW; goes to Belton lake to people watch; mood baseline; no suicidal ideation; no homicidal ideation; no auditory or visual hallucinations; good social support; adequate social environment; and good coping skills. A December 2018 record from Central Texas VAMC revealed: prior divorces; lives alone and spends his days watching tv and running errands as needed; feelings of loneliness when he sees other people living independently; no friends in the area; frequent nightmares; socialization at the Vet Center and the local VFW; goes to Belton lake to people watch; mood is baseline; no suicidal ideation; no homicidal ideation; no auditory or visual hallucinations; low risk for self-harm; casually dressed and fairly groomed; good eye contact; no psychomotor agitation; normal speech; euthymic mood; appropriate and full affect; alert and oriented; thought process coherent/logical/goal-directed; thought content negative for auditory and visual hallucinations and negative for suicidal or homicidal ideation; no delusions; and positive for depression, anxiety, and substance abuse.

The February 2019 VA mental disorders examination revealed: depressed mood; chronic sleep impairment, including re-experiencing traumatic events during sleep; subjective low mood; loss of interest and pleasure in activities previously enjoyed; guilt; crying spells; feelings of worthlessness; decreased energy; tiredness and fatigue; increased irritability; and decreased interest in sex. The examiner assessed occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, noting that the level of occupational and social impairment evidenced across the lifespan of the Veteran appeared minimal because he had marriages lasting over two decades and had successfully retired from various careers. A February 2019 record from Central Texas VAMC revealed: prior divorces; lives alone and spends his days watching tv and running errands as needed; feelings of loneliness when he sees other people living independently; no friends in the area; frequent nightmares; self-isolation; trouble with relationships; no friends; socialization at the Vet Center and the local VFW; goes to Belton lake to people watch; mood is baseline; no suicidal ideation; no homicidal ideation; no auditory or visual hallucinations; low risk for self-harm; moderately severe depression; severe anxiety; and insomnia.

Based on the evidence above, the Board finds that, after resolving reasonable doubt in the Veteran’s favor, the severity, frequency, and duration of his psychiatric symptoms most closely approximated occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood (contemplated by a 70 percent rating) throughout the appeal period. Although the Veteran’s symptoms seemed to fluctuate during the appeal period and/or may have been inconsistently reported to and/or recorded by different providers, the Board has interpreted the most severe symptoms to be consistent throughout the appeal period, to the Veteran’s benefit. Specifically, the evidence above documents several of the 70 percent criteria, including: occupational impairment with deficiencies in most areas; social impairment with deficiencies in most areas; suicidal ideation; near-continuous depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control; difficulty in adapting to stressful circumstances; and inability to establish and maintain effective relationships. However, the Board finds that a higher rating of 100 percent is not warranted because, although the Veteran may have total occupational impairment due to his psychiatric symptoms and some symptoms contemplated by the higher rating (persistent delusions and hallucinations; persistent danger of self-harm), he has never concurrently had total social impairment. Specifically, despite self-isolating and feeling socially withdrawn at times, the Veteran has reported good relationships with his former spouses, keeping in contact with family in Puerto Rico, volunteering with Meals on Wheels, socializing with friends, attending church rarely, and socializing with others at the Vet Center and his local VFW; further, the Veteran was able to maintain long-term marriages (despite ultimately divorcing) and socialize appropriately during long-term interactions with medical providers and examiners. Because the severity, frequency, and duration of the Veteran’s psychiatric symptoms did not demonstrate total social impairment, the 100 percent rating is precluded. Thus, the Board grants an increased rating to 70 percent, but no higher.

 

M. C. WILSON

Acting Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board H. Daus, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.