﻿Citation Nr: AXXXXXXXX
Decision Date: 07/30/19 Archive Date: 07/29/19

DOCKET NO. 190115-2855
DATE: July 30, 2019

ORDER

Entitlement to a disability rating in excess of 50 percent for the Veteran’s major depressive disorder is denied.

FINDING OF FACT

The Veteran’s depression manifested as occupational and social impairment with reduced reliability and productivity.

CONCLUSION OF LAW

The criteria for a disability rating in excess of 50 percent for the Veteran’s depression have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 4.1-4.14, 4.125, 4.130, Diagnostic Code 9434 (2018). 

REASONS AND BASES FOR FINDING AND CONCLUSION

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework.

The Veteran selected the Higher-Level Review lane when she submitted the RAMP election form. Accordingly, the November 2018 RAMP rating decision considered the evidence of record prior to the issuance of the RAMP rating decision. The Veteran timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

Increased Rating 

Disability ratings are determined by applying the criteria established in VA’s Schedule for Rating Disabilities, which is based upon the average impairment of earning capacity. Individual disabilities are assigned separate Diagnostic Codes. 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 4.1, 4.20 (2018). When a question arises as to which of two ratings applies under a particular Diagnostic Code, the higher evaluation is assigned if the disability more nearly approximates the criteria for the higher rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2018). Consideration must be given to increased evaluations under other potentially applicable Diagnostic Codes. Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991). After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the claimant. 38 C.F.R. § 4.3 (2018). 

Where entitlement to compensation already has been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Separate ratings may be assigned for separate periods of time based on the facts found; this practice is known as staged ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007). 

The Veteran’s depression is rated under the General Formula for Mental Disorders (General Formula), Diagnostic Code 9434. 38 C.F.R. § 4.130. A 50 percent rating is assigned when symptoms such as flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; or difficulty in establishing and maintaining effective work and social relationships cause occupational and social impairment with reduced reliability and productivity.

A 70 percent rating is assigned when symptoms such as suicidal ideation; obsessional rituals which interfere with routine activities; intermittently illogical, obscure, or irrelevant speech; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); or inability to establish and maintain effective relationships cause occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood.

A 100 percent rating is assigned when symptoms such as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; or memory loss for names of close relatives, own occupation or own name cause total occupational and social impairment.

Under the General Formula for Mental Disorders (General Formula), the Board must conduct a “holistic analysis” that considers all associated symptoms, regardless of whether they are listed as criteria. Bankhead v. Shulkin, 29 Vet. App. 10, 22 (2017); 38 C.F.R. § 4.130. The Board must determine whether unlisted symptoms are similar in severity, frequency, and duration to the listed symptoms associated with specific disability percentages. Then, the Board must determine whether the associated symptoms, both listed and unlisted, caused the level of impairment required for a higher disability rating. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 114-118 (Fed. Cir. 2013). 

The Veteran received a VA examination in June 2016. The examiner stated that, 

[t]he Veteran’s mental health symptoms appear best categorized as mild and result in no more than mild impairment in daily functioning. While he described himself during the interview in a way suggesting more severe symptoms and functional impairment, his quantitative score on a clinical symptom gauge suggests mild symptoms, and his treatment notes suggest the same. 

The examiner stated that the Veteran was “generally functioning quite well on numerous domains.” He maintained a fair to good relationship with his wife, son, and sisters. He had social contacts at work and church. The Veteran did not have many close friends and denied having any hobbies. He stated that most of his friends moved away, but that he still communicated with them every two to three months. The examiner noted that the Veteran reported working between 40 and 55 hours per week, “…without significant interference from mental health symptoms.” He had a negative opinion of his former supervisor, who had left the job after the Veteran and other employees filed grievances. He felt depressed every day, trouble staying asleep, and some difficulty concentrating. He felt “a little bit irritable about things.” The examiner noted that the Veteran’s thought process was logical and organized, with no evidence of delusional thought contact. He reported fluctuating decreased interest in activities, but was “somewhat vague” and was unable to provide examples of things he used to enjoy but no longer did. He stated that he fell asleep without difficulty, but then had problems staying asleep and did not feel rested when he got up in the morning during the week. He denied having suicidal or homicidal ideation. He stated that he occasionally thought of chopping his foot off because it was so painful. The examiner stated that the Veteran had depressed mood, chronic sleep impairment, flattened affect, and disturbances of motivation and mood. The examiner stated that his symptoms were “subclinical in nature.” He had “little insight and/or education about his mental health symptoms or diagnosis.” 

The examiner opined the Veteran experienced occupational and social impairment due to mild symptoms which decreased work efficiency and his ability to perform occupational tasks during periods of significant stress.

The Veteran’s next VA examination was in March 2017. The Veteran continued to report similar symptoms. The examiner stated that the Veteran’s symptoms “…appear to be mildly and intermittently impacting his level of social and occupational functioning.” He continued to report a good relationship with his son, who lived with him and his wife. He stated his relationship with his wife was mostly good with some bad days when he did not feel like doing things. He stated that he and his wife went out to dinner and occasionally got together with friends. He went to church twice per month. He stated he had good relationships with his siblings and a cousin. He denied having hobbies. The examiner noted that the Veteran remined employed as a postal service carrier and had not received any reprimands for his performance. He stated he had some forgetfulness. His depression did not significantly impact his employment though the examiner noted it could mildly interfere with his ability to successfully complete work-related tasks. 

The Veteran reported that his mood depended largely on his pain level, and that when he had pain, he felt more irritable. He felt “down” most of the time. He felt “ok” about himself. He denied suicidal and homicidal ideation but stated that had thoughts of chopping his foot off due to pain, but did not have any intent to follow through. 

The examiner found that the Veteran’s depressive symptoms mildly and intermittently impacted his level of social and occupational functioning.

The record also contains a private opinion from April 2018. Dr K. U. noted the Veteran had a depressed, low mood almost every day because he was no longer able to do thinks he used to do because of his pain. He did not like to socialize with others and preferred to remain isolated. His wife said he never wanted to do anything. He had trouble falling asleep and staying asleep; he was often kept awake by pain. The doctor stated that the Veteran showed signs of irritability and anger and had run-ins with coworkers at work. The Veteran also reported having memory and concentration issues that negatively impacted his job. He stated that he had problems at work due to irritability including “run-ins” with co workers and managers. 

The evidence of record shows that the Veteran’s depression was manifested by symptoms associated with a 50 percent rating such as memory and concentration issues and flattened affect. Chronic sleep impairment is contemplated by the lower 30 percent rating. 

The Veteran also had symptoms associated with a 70 percent rating, such as being in a near, continuous depressive state and reports of irritability. Nevertheless, the Board concludes that the Veteran’s symptoms did not cause the level of impairment required for a disability rating of 70 percent or higher because he does not have deficiencies in most areas. Though the Veteran reports suffering from depression daily, the record does not show that his depression affected any his ability to function independently. With regard to his anger problems, during the appeal period this anger and irritability has only recently manifested. Though he reported having issues with his co-workers because of his anger, the record does not show he received any formal discipline at work. Furthermore, there is no evidence he has episodes of unprovoked anger or periods of violence. 

The Veteran has depression. However, simply because the Veteran has these symptoms, and because the 70 percent level contemplates a deficiency in “mood” among other areas, does not mean his PTSD rises to the 70 percent level. Indeed, the 50 percent and 70 percent criteria each contemplate some form of mood impairment. The Board, instead, must look to the frequency, severity, and duration of the impairment. Id. Here, the Veteran’s depressed mood is expressly contemplated by the 50 percent criteria, which contemplates “disturbances” in mood. 38 C.F.R. § 4.130. As noted above, while the Veteran reported “near-continuous” depression, it did not impact his ability to function independently. 

The Veteran’s depression impacted his relationships. He stated that he has fewer friends and that he needs to find a hobby. However, his relationships with his wife, son, and other family members are strong and he maintained a few friendships. Moreover, while he prefers to remain isolated, he still goes to church at least twice a month. Therefore, the impact of his symptoms on his relationships is more closely described as “difficulty” as set forth in the 50 percent criteria, as opposed to “inability” as described in the 70 percent criteria. The Veteran is able to establish and maintain relationships. 

At both of his VA examinations, the Veteran reported that he had thought of chopping his foot off because it hurt so much. Self-harm is contemplated by the 100 percent criteria. However, the Veteran stated that even though he thought of this occasionally, he did not intend to follow through with his thoughts. The 100 percent criteria contemplate being a “persistent danger” to oneself or others. Occasional thoughts of chopping his foot off without intent does not rise to the level of severity that is described by “persistent” danger. Additionally, the record clearly shows that the Veteran does not have both total social and total occupational impairment, as he is employed and has solid relationships with his family and maintains a few friendships. 

The Board finds the severity, frequency, and duration of the Veteran’s symptoms more closely approximate the symptoms contemplated by a 50 percent rating, which are less severe, less frequent, and shorter in duration than those contemplated by a 70 percent rating. Consequently, the Board concludes the level of impairment caused by the Veteran’s symptoms more closely approximates the level associated with a 50 percent rating. A higher rating is therefore denied. 

 

 

D. Martz Ames

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board R. Brunot, Associate Counsel 

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.