﻿Citation Nr: AXXXXXXXX
Decision Date: 01/31/20 Archive Date: 01/31/20

DOCKET NO. 190925-33539
DATE: January 31, 2020

ORDER

An effective date earlier than April 25, 2015, for the grant of service connection for posttraumatic stress disorder (PTSD) is denied.

An initial rating in excess of 30 percent for posttraumatic stress disorder (PTSD), prior to May 7, 2018, is denied.

A rating in excess of 70 percent for PTSD, from May 7, 2018, forward, is denied.

Service connection for chronic obstructive pulmonary disease (COPD) is granted.

Service connection for frozen diaphragm is granted.

Service connection for asthma is denied.

FINDINGS OF FACT

1. The Veteran’s VA Form 21-0966 Intent to File for service connection for PTSD was received on April 25, 2015, and granted by a December 2015 rating decision.

2. From April 25, 2015 to May 7, 2018, the Veteran’s PTSD was not shown to cause occupational and social impairment with reduced reliability and productivity, or worse.

3. At no time has the Veteran’s PTSD been shown to cause total occupational and social impairment.

4. The weight of the evidence supports the finding that there is a medical nexus between the Veteran’s presumed exposure to Agent Orange and his COPD. 

5. The weight of the evidence supports the finding that there is a medical nexus between the Veteran’s in-service fall and his frozen diaphragm. 

6. The weight of the evidence is against a finding that there is a medical nexus between the Veteran’s asthma and either his active duty service, or his presumed Agent Orange exposure. 

CONCLUSIONS OF LAW

1. The criteria for an effective date prior to April 25, 2015, for the grant of service connection for PTSD have not been met. 38 U.S.C. § 5110, 38 C.F.R. § 3.400.

2. The criteria for a rating in excess of 70 percent for PTSD, to include a rating in excess of 30 percent prior to May 7, 2018, have not been met. 38 U.S.C. § 1155; 38 C.F.R. § 4.130, Diagnostic Code 9411.

3. The criteria for service connection for COPD have been met. 38 U.S.C. § 1110; 38 C.F.R. § 3.303.

4. The criteria for service connection for a frozen diaphragm have been met. 38 U.S.C. § 1110; 38 C.F.R. § 3.303.

5. The criteria for service connection for asthma have not been met. 38 U.S.C. § 1110; 38 C.F.R. § 3.303.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from February 1966 to February 1969. 

In September 2018, the Veteran elected the modernized review system. 38 C.F.R. § 19.2(d). The Veteran selected the Higher-Level Review lane when he opted in to the Appeals Modernization Act (AMA) review system by submitting a Rapid Appeals Modernization Program (RAMP) election form. A rating decision was issued in September 2018, and the Veteran then filed a VA form 10-182 notice of disagreement selecting to appeal his case to the Board using the evidence lane. As such, the Board will consider the evidence of record at the time of the September 2018 rating decision, as well as any evidence submitted within 90 days of the notice of disagreement being received. 

Evidence (namely VA treatment records) was added to the claims file during a period of time when new evidence was not allowed. Therefore, the Board may not consider this evidence. 38 C.F.R. § 20.300. The Veteran may file a Supplemental Claim and submit or identify this evidence. 38 C.F.R. § 3.2501. If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filing a Supplemental Claim are included with this decision.

EARLIER EFFECTIVE DATE 

1. An effective date earlier than April 25, 2015, for the grant of service connection for PTSD is denied.

The Veteran was granted service connection for PTSD by a December 2015 rating decision, with an initial 30 percent rating, effective April 25, 2015, the date his Intent to File form was received by VA. The Veteran disagreed with the assigned 30 percent rating. A September 2018 rating decision increased the Veteran’s disability rating to 70 percent, effective May 7, 2018. The Veteran disagreed with the 70 percent rating and assignment of the April 25, 2015 effective date. 

The general rule for earlier effective dates for service connection provides that if a claim for disability compensation is received within one year after separation from service, the effective date of entitlement will be either the day following separation, or the date entitlement arose. 38 U.S.C. § 5110 (b)(1).

If a claim is not received within a year of separation, VA regulations provide that the effective date is the date of receipt of the claim or the date entitlement arose, whichever is later. 38 C.F.R. § 3.400.

Currently, a specific claim in the form prescribed by the Secretary of VA must be filed in order for benefits to be paid to any individual under the laws administered by the VA. 38 U.S.C. § 5101 (a). Historically, a “claim” has been defined broadly to include a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief in entitlement to a benefit. 38 C.F.R. § 3.1 (p); Brannon v. West, 12 Vet. App. 32, 34-35 (1998).

Moreover, historically, any communication indicating an intent to apply for a benefit under the laws administered by VA could be considered an informal claim provided it identifies, but not necessarily with specificity, the benefit sought. See 38 C.F.R. § 3.155 (a). To determine when a claim was received, the Board must review all communications in the claims file that may be construed as an application or claim. See Quarles v. Derwinski, 3 Vet. App. 129, 134 (1992).

A review of the record shows that the first communication from the Veteran indicating an intent to apply for benefits for his claim for service connection for PTSD was received in April 25, 2015. While the Veteran asserts that he is entitled to an earlier effective date, he has not explained why he believes he is entitled to an effective date earlier than April 25, 2015. An intent to apply for benefits is an essential element of any claim, whether formal or informal, and, further, the intent must be communicated in writing. See Criswell v. Nicholson, 20 Vet. App. 501, 504 (2006).

Despite the fact that the Veteran’s PTSD is clearly due to his active service, the date entitlement arose, he did not indicate an intent to file for service connection for PTSD until April 25, 2015. As such, the date of receipt of claim is the later of the date of entitlement and the date of claim, and VA regulations dictate that the date of receipt of claim should be the effective date that is assigned.

Accordingly, the claim for an effective date earlier than April 25, 2015, for service connection for PTSD is denied.

INCREASED RATING 

2. An initial rating in excess of 30 percent for PTSD, from April 25, 2015 to May 7, 2018, is denied.

The Veteran was granted service connection for PTSD by a December 2015 rating decision, with an initial 30 percent rating, effective April 25, 2015, the date his Intent to File form was received. The Veteran disagreed with the assigned 30 percent rating. A September 2018 rating decision increased the Veteran’s disability rating to 70 percent, effective May 7, 2018. The Veteran disagreed with the 70 percent rating and assignment of the April 25, 2015 effective date. Therefore, the Board must consider whether a rating in excess of 30 percent is warranted prior to May 7, 2018, and then whether a rating in excess of 70 percent is warranted at any time. 

Under the General Rating Formula for Mental Disorders, a 30 percent rating is assigned when a veteran’s PTSD causes occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, or mild memory loss (such as forgetting names, directions, recent events). 38 C.F.R. § 4.130, Diagnostic Code 9411.

A 50 percent rating is assigned when a veteran’s PTSD causes occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short-term and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; or difficulty in establishing and maintaining effective work and social relationships. 38 C.F.R. § 4.130, Diagnostic Code 9411.

A 70 percent evaluation is assigned when a veteran’s PTSD causes occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); or an inability to establish and maintain effective relationships.

A 100 percent rating is assigned when a veteran’s PTSD causes total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; danger of hurting self or others; intermittent inability to perform activities of living (including maintenance of minimal hygiene); disorientation to time or place; or, memory loss for names of close relatives, occupation, or own name. Id.

When determining the appropriate disability evaluation to assign, the Board’s primary consideration is the Veteran’s symptoms, but it must also make findings as to how those symptoms impact the Veteran’s occupational and social impairment. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 118 (Fed. Cir. 2013); Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). Because the use of the term “such as” in the rating criteria demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, the Board need not find the presence of all, most, or even some, of the enumerated symptoms to award a specific rating. Mauerhan, 16 Vet. App. at 442. Nevertheless, as all ratings in the general rating formula are also associated with objectively observable symptomatology and the plain language of the regulation makes it clear that the Veteran’s impairment must be “due to” those symptoms, a veteran may only qualify for a given disability by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration. Vazquez-Claudio, 713 F.3d at 118. 

Here, the Veteran’s treatment records do not reveal any findings that would establish occupational and social impairment with reduced reliability and productivity. Of note, at a neurology appointment in July 2015, it was noted that the Veteran denied having ever reported his anxiety to anyone or ever sought treatment for PTSD.

The Veteran was afforded a VA examination in November 2015. After an in-person evaluation and a review of the Veteran’s claims file, the examiner found that he met the criteria for a diagnosis of PTSD that conformed to the DSM-5 criteria. The Veteran reported being married for forty-seven years. He reported that after he got married, he struggled with his wife because he had a hard time adjusting to life outside the military. He reported that his wife’s current concern was his flashbacks, as he woke up in the middle of the night due to them. He reported feelings of frustration and irritability most of the time and having to avoid crowded places. He reported that he did odd-jobs in the 1980’s but started his own business because he could not get along with others. The examiner noted that the Veteran was seeing a counselor from the Vet Center, which the Veteran reported had been helpful. The examiner found that the Veteran’s psychiatric symptomatology was best characterized as occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, consistent with a 30 percent rating. 

The Veteran’s treatment records show that he attended six counseling sessions from August 2015 to November 2015. He initially reported symptoms of agitation, hypervigilance, hyperarousal, feelings of isolation, feeling guilt for surviving the war, overreacting to events, avoidance of crowds, nightmares, insomnia, anxiety, and depression. Through the six sessions, the Veteran reported that his homework assignments, like writing impact statements and contemplating events of the past, were positive experiences for him. He was also counseled on coping strategies, which he reported helped him when he had to travel by airplane. He also discussed a family event where he socialized and spoke of positive changes he was noticing in his behavior. The Veteran consistently denied any suicidal or homicidal ideation at the counseling sessions. 

As described, the Veteran has clearly experienced psychiatric symptomatology as a result of his PTSD. However, the record does not establish that the Veteran’s PTSD results in occupational and social impairment with reduced reliability and productivity due to such symptoms as flattened affect, circumstantial, circumlocutory, or stereotyped speech, panic attacks more than once a week, difficulty in understanding complex commands, impaired judgment, impaired abstract thinking, disturbances of motivation and mood, or difficulty in establishing and maintaining effective work and social relationships. The Veteran has reported memory issues, but the record does not indicate that he has any of the other symptoms associated with a 50 percent rating prior to May 2018. Here, the medical evidence of record does not support an initial rating in excess of 30 percent. Thus, it cannot be concluded that the Veteran’s PTSD results in occupational and social impairment, with reduced reliability and productivity or with deficiencies in most areas, or worse. 

Accordingly, an initial rating in excess of 30 percent for PTSD prior to May 2018 is denied.

A rating in excess of 70 percent for PTSD, from May 7, 2018, forward, is denied. 

The Veteran seeks a disability rating in excess of 70 percent for his service-connected PTSD, from May 7, 2018, forward.

The Veteran was afforded a VA examination in May 2018, at which he endorsed suicidal ideation, but denied any psychiatric hospitalizations or suicide attempts. The Veteran reported not being able so sleep over the last several years, having flashbacks several times a week, being nervous or anxious all of the time, getting panic attacks, having a sensitive temper, and having no friends. He also reported that his wife almost left him, threatening to leave if he did not change, which prompted him to go to the Vet Center to get help. The examiner noted that the Veteran had the following symptoms: depressed mood, anxiety, suspiciousness, panic attacks that occurred weekly or less often, chronic sleep impairment, mild memory loss, flattened affect, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, difficulty in adapting to stressful circumstances, suicidal ideation, and impaired impulse control. The examiner found that his symptomatology was best characterized by occupational and social impairment with deficiencies in most areas, which is consistent with a 70 percent rating. 

The Veteran underwent a private psychiatric examination in May 2018. He reported having difficulty in work situations, like getting along with co-workers, not being able to handle criticism, and getting into physical altercations. He reported having nightmares, an uncontrollable temper, flashbacks, and poor memory. He reported getting into a physical altercation at a golf course, about six months prior, when someone yelled at him and put his finger on him, which resulted in the Veteran hitting that person in the mouth. His wife also provided a statement, which described most of the reports the Veteran provided. She also stated that he used to take pride in his personal appearance, but noted that such commitment had declined over the years. The Veteran reported being married for fifty years, with no children, and reported having no friends. He also reported that he started a business with his wife in 1993, but the business had been declining because of his mental health issues. His current role had been dramatically reduced to distributing brochures to people who might use the products they represented, as his wife had the primary responsibility of day to day operations and running the business. The examiner found that the Veteran had total occupational and social impairment due to disorientation to time or place, as his wife stated he gets the days of the week confused. 

To obtain a total schedular rating for his PTSD during this time period, the evidence must show that the Veteran’s PTSD causes total social impairment and total occupational impairment.

Here, the evidence does not show total social impairment. The Veteran was afforded a VA examination in May 2018 where he stated that his wife was going to leave him if he did not get better. He reported that he went to the Vet Center for help, and the fact remains that he has been married for fifty years. He did report getting into a physical altercation about six months prior to May 2018, where he may have had a disproportionate response, but did not seem to be the instigator of the incident. Thus, the evidence of record shows signs of social impairment, but not total social impairment, as the Veteran was on the golf course. 

The Board does not wish to diminish the severity of the Veteran’s psychiatric symptomatology, but the fact remains that a 70 percent rating anticipates the inability to establish and maintain effective relationships. Here, the Veteran has remained married for more than 50 years, and while there may be marital strain, even significant marital strain, the Board does not find that this shows total social impairment. 

Here, the evidence also does not show total occupational impairment. He stated at his May 2018 private examination that he distributes brochures to people who may use the products his company represents. Although he has reported a substantially diminished role in his company, the evidence shows that he still does have a role in the business. The Veteran has reported occupational difficulties, like getting in a physical altercation with a co-worker and kicking a co-worker out of his car. Although these incidents show occupational impairment, these are incidents that happened before 1993, when he started his own company and did not take place during this period on appeal. The evidence of record has not shown that he has total occupational impairment in his current role as a co-owner of a business with his wife. 

There is no question that the Veteran is impacted by his PTSD, evidenced by his depressed mood, anxiety, panic attacks, hypervigilance, chronic sleep impairment, nightmares, flattened affect, disturbances of motivation and mood, neglect of personal hygiene, difficulty in establishing and maintaining effective work and social relationships, difficulty in adapting to stressful circumstances, suicidal ideation, and impaired impulse control. However, the impact of these symptoms is generally more congruent with the currently assigned disability rating of 70 percent, than they would be with a higher rating during this period. 

For a total schedular rating, it must be shown that the Veteran has both total social and total occupational impairment as a result of his PTSD, and such simply is not shown by the record. Here, the Veteran has consistently displayed some level of social functioning, as evidenced by his fifty-year marriage to his wife. Having always displayed some evidence of social competence, the Veteran does not now, nor at any time during the appeal period, have total, meaning complete, social impairment. He has also shown some level of occupational functioning, as he has maintained a business with his wife since 1993. 

The evidence of record does show that the Veteran has disorientation to time or place, as he forgets which day of the week it is, however, he has not shown any of the other symptoms identified in the schedular criteria for a 100 percent rating for PTSD such as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimum personal hygiene); or memory loss for names of close relatives, own occupation, or own name. Although the May 2018 private examiner found that the Veteran had total social and occupational impairment due to disorientation to time or place, the Board has not uncovered any other evidence of psychiatric symptoms which would fall into the rating criteria for a 100 percent rating under the General Rating Formula for Mental Disorders. 

Accordingly, the criteria for a rating in excess of 70 percent for PTSD, from May 7, 2018, forward, is denied.

Service Connection

Service connection requires competent evidence showing: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Service connection may be granted on a presumptive basis for certain diseases associated with exposure to certain herbicide agents even though there is no record of such disease during service, if they manifest to a compensable degree any time after service, in a Veteran who had active military, naval, or air service for at least 90 days, during the period beginning on January 9, 1962 and ending on May 7, 1975, in the Republic of Vietnam, including the waters offshore, and other locations if the conditions of service involved duty or visitation in Vietnam. 38 U.S.C. § 1116; 38 C.F.R. §§ 3.307, 3.309(e), 3.313. This presumption may be rebutted by affirmative evidence to the contrary. 38 U.S.C. § 1113; 38 C.F.R. §§ 3.307, 3.309.

3. Service connection for COPD is granted.

The Veteran asserts that his COPD is due to Agent Orange exposure. The Veteran served in Vietnam and is presumed to have been exposed to Agent Orange. The Board notes that COPD is not a disease that is presumed, due to exposure to Agent Orange. 

The Veteran’s medical records show that he was confirmed to a have a diagnosis of COPD in July 2015. 

The Board notes that the Veteran has not been afforded a VA examination for his COPD. The Veteran has provided an independent medical opinion regarding his COPD. After reviewing the Veteran’s claims file, the examiner provided a positive nexus opinion. The examiner opined that it was as likely as not that the Veteran’s COPD resulted from his exposure to Agent Orange in Vietnam. The examiner cited to multiple medical studies that indicates causation exists between Agent Orange exposure and COPD. The studies found deaths from COPD were increased with increasing Agent Orange exposure. The examiner did note that the Veteran did not obtain treatment for his lung condition until after his active duty, but that he and his wife indicated that his symptoms have existed since his time in service. Nonetheless, medical literature has shown that COPD results from exposure to Agent Orange. Here, there is one positive nexus opinion of record, that has a strong rationale and is supported by research studies and has not been challenged or undermined by any contrary medical evidence. 

Accordingly, the Board finds that service connection for COPD, due to Agent Orange exposure is warranted.

4. Service connection for a frozen diaphragm is granted.

The Veteran asserts that he fell off the back of a truck while in Vietnam. He asserts that he injured his back, but also believes that it was the cause of his paralyzed diaphragm. 

The Veteran’s medical records show that he was confirmed to have a diagnosis of a paralyzed diaphragm in July 2015. The Veteran provided a statement in December 2019, stating that after falling off the back of a truck in Vietnam, he was left breathless for a while and had a numb, tingling feeling from his lower chest down to his legs. He stated from that day forward, his breathing felt more labored and different than usual. In 2013, he underwent a comprehensive breathing test and an x-ray, which revealed a paralyzed diaphragm. The Board finds that the Veteran’s claimed in-service account of falling out of a truck to be credible and concedes that there was an in-service injury. 

The Board notes that the Veteran has not been afforded a VA examination for his paralyzed diaphragm. The Veteran has provided an independent medical examination regarding his paralyzed diaphragm. The examiner reported that a paralyzed diaphragm is rarely caused by an injury to the diaphragm itself, but rather by an injury to the phrenic nerve or cervical spine. The examiner noted that forty to fifty percent of paralyzed diaphragms are idiopathic, or having an unknown cause, and due to this, causes it to go undiagnosed and untreated, which can worsen over time. The examiner also noted that injuries to the phrenic nerve is the most common cause of diaphragmatic weakness, and is often asymptomatic, only to be discovered during x-rays. The examiner noted that the doctor who diagnosed the paralyzed diaphragm in 2013, opined that it was probably of long-term duration and idiopathic in nature since the Veteran had not undergone thoracic surgery or radiation therapy that could have damaged the phrenic nerve. The examiner opined that it was as likely as not that the fall from the back of the truck, where the Veteran experienced breathlessness and a tingling sensation from his lower chest to his legs was the blunt traumatic event that injured his phrenic nerve and diaphragm. 

Here, there is one positive nexus opinion of record, which has a strong rationale and is supported by medical literature and has not been challenged or undermined by any contrary medical evidence. 

Accordingly, the Board finds that service connection for a frozen diaphragm is warranted.

5. Service connection for asthma is denied.

The Veteran asserts that his asthma is due to exposure from Agent Orange. The Board notes that asthma is not a disease that is presumed, due to exposure to Agent Orange. 

The Veteran’s medical records show that he was confirmed to have a diagnosis of asthma in July 2015. The Veteran asserts that he was diagnosed with asthma in the 1970s, by a doctor who has since passed away. The Board notes that the Veteran’s service treatment records (STRs) are silent for any complaints, treatment, or a diagnosis for asthma or any other respiratory condition during his active duty service. 

The Board notes that the Veteran has not been afforded a VA examination for his asthma. The Veteran has provided a nexus opinion from a private physician. The physician noted that the Veteran was under her care for his asthma, COPD, and frozen diaphragm since 2013. She noted that he had a history of smoking, but that it lasted for less than three years and smoked less than one pack per day. The physician opined that Agent Orange exposure is the most likely cause of his lung impairment. She cited to research studies which found that Agent Orange exposure is associated with increased risk of death, due to COPD; and exposure to herbicides in Vietnam caused an increased risk of mortality from respiratory diseases. Here, the physician opined that his lung impairment was due to Agent Orange exposure, but did not opine directly as to whether Agent Orange was the cause of his asthma. The physician cited to research articles that related Agent Orange to COPD and other respiratory diseases, but not asthma, specifically. The Board finds that this nexus opinion is not sufficient to support a grant of service connection for asthma because it is unclear whether his exposure to Agent Orange was the cause of his asthma, or his respiratory impairment as a whole. 

As previously noted, the Veteran did not have any in-service complaints of respiratory conditions. The Veteran has stated that he had lung problems, which got progressively worse, after his separation from the military. However, the Veteran stated that his lung problems were due to frequent bouts of bronchitis. He stated that he was diagnosed with asthma in the 1970s. The Veteran separated from the military in February 1969, which suggests that he did not have asthmatic symptoms for at least a few years after his separation. Here, there is no credible evidence of a continuity of asthma symptoms dating from the Veteran’s active duty service, through the present. 

Accordingly, service connection for asthma is denied.

 

 

MATTHEW W. BLACKWELDER

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board E. Fu, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.