﻿Citation Nr: AXXXXXXXX
Decision Date: 05/29/20 Archive Date: 05/29/20

DOCKET NO. 190719-39827
DATE: May 29, 2020

ORDER

An initial disability rating of 50 percent, but no higher, prior to June 18, 2018 for other trauma and stressor related disorder is granted subject to the governing criteria applicable for the payment of monetary benefits.

An increased disability rating in excess of 50 percent from June 18, 2018 for other trauma and stressor related disorder is denied. 

A total disability rating based on individual unemployability (TDIU) is denied.

FINDINGS OF FACT

1. Prior to June 18, 2018, the severity, frequency and duration of the Veteran’s symptoms associated with his other trauma and stressor related disorder more closely approximate occupational and social impairment with reduced reliability and productivity.

2. From June 18, 2018, the severity, frequency and duration of the Veteran’s symptoms associated with his other trauma and stressor related disorder did not more closely approximate occupational and social impairment with deficiencies in most areas.

3. Throughout the appeal period, most probative evidence of record does not demonstrate the Veteran has been incapable of performing the physical and/or mental acts required by employment by reason of his service-connected other trauma and stressor related disorder.

CONCLUSIONS OF LAW

1. The criteria for the entitlement to an initial disability rating of 50 percent, but no higher, prior to June 18, 2018 for other trauma and stressor related disorder have been met. 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.6, 4.7, 4.27, 4.126, 4.130, Diagnostic Code (DC) 9411 (2019).

2. The criteria for the entitlement to an increased disability rating in excess of 50 percent from June 18, 2018 for other trauma and stressor related disorder have not been met. 38 U.S.C. § 1155; 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.6, 4.7, 4.27, 4.126, 4.130, DC 9411. 

3. The criteria for entitlement to TDIU have not been met. 38 U.S.C. § 1155; 

38 C.F.R. §§ 3.340, 3.341, 4.16, 4.19, 4.25 (2019).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from January 1981 to January 1984, and January 1990 to December 1991.

This matter comes before the Board on appeal of an April 2019 rating decision by a Department of Veterans Affairs (VA) Regional Office (RO). The Veteran timely appealed the decision by filing a July 2019 Decision Review Request. At that time, he elected the Evidence Submission Review lane. As such, the Board may only consider the evidence of record prior to the expiration of the 90-day evidence submission period following the date of this election. 

1. The issue of entitlement to an initial increased rating for other trauma and stressor related disorder.

The Veteran contends that he is entitled to an initial disability rating in excess of 30 percent prior to June 18, 2018, and in excess of 50 percent thereafter, for his other trauma and stressor related disorder, previously diagnosed as posttraumatic stress disorder (PTSD).

The other trauma and stressor related disorder is rated under DC 9411, which is evaluated under the General Rating Formula for Mental Disorders (General Formula). 38 C.F.R. § 4.130. Under the General Formula, the Board must conduct a “holistic analysis” that considers all the associated symptoms, regardless of whether they are listed in the rating criteria. See Bankhead v. Shulkin, 29 Vet. App. 10, 22 (2017). For any unlisted symptom, the Board must determine whether it is of a similar severity, frequency and duration to the listed symptoms associated with the specific disability percentages. Upon doing so, the Board must consider whether the combination of the listed and unlisted symptoms cause the overall level of impairment required for a higher disability rating. See Vazquez-Claudio v. Shinseki, 713 F.3d 112, 117 (2013).

The issues on appeal are whether the Veteran’s associated symptomatology caused the level of impairment required for a 50 percent disability rating or higher prior to June 18, 2018, and a 70 percent disability rating or higher from June 18, 2018. 

Upon consideration of the evidence discussed below, the Board concludes the Veteran’s symptoms did cause the level of impairment required for a disability rating of 50 percent throughout the appeal period, but did not cause the level of impairment required for a disability rating of 70 percent or higher at any point during the appeal period. 

The General Formula provides for a 30 percent disability rating for occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care and normal conversation), due to such symptoms as: depressed mood; anxiety; suspiciousness; panic attacks (weekly or less often); chronic sleep impairment; and mild memory loss (such as forgetting names, directions, and recent events).

A 50 percent disability rating is warranted for occupational and social impairment with reduced reliability and productivity due to symptoms such as: flattened affect, circumstantial, circumlocutory or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgement; impaired abstract thinking; disturbances of motivation and mood; or difficulty in establishing and maintaining effective work and social relationships.

A 70 percent disability rating is warranted for occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgement, thinking, or mood, due to symptoms such as: suicidal ideation; obsessional rituals which interfere with routine activities; intermittently illogical, obscure, or irrelevant speech; near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); or inability to establish and maintain effective relationships.

A 100 percent disability rating is warranted for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; or memory loss for names of close relatives, own occupation, or own name.

The evidence of record suggests that, for at least a portion of the appeal period, the Veteran carried non service-connected psychiatric diagnoses; namely, substance abuse related diagnoses. As the medical evidence of record does not provide sufficient information for the Board to distinguish the symptoms attributable to his service-connected other trauma related stressor disorder from his substance abuse related diagnoses, the Board accords him the benefit of the doubt and will consider the entirety of his psychiatric symptomology. See Mittleider v. West, 11 Vet. App. 181, 182 (1998).

The lay and medical evidence of record shows the Veteran’s other trauma and stressor related disorder was manifested by symptoms associated with a 50 percent disability rating, such as flattened affect, impairment of speech, impairment of short-term memory, impaired judgment, disturbances of motivation and mood, and difficulty in establishing and maintaining effective social relationships; symptoms associated with a 70 percent disability rating, such as impaired impulse control, neglect of personal hygiene, and suicidal ideation. He also had symptoms that are not listed under a specific disability rating, such as flashbacks, nightmares, fatigue, decreased energy, varied appetite, being easily startled, hypervigilance, and difficulty concentrating. 

The Board finds the severity, frequency and duration of the Veteran’s unlisted symptoms more closely approximated the symptoms contemplated by a 50 percent disability rating throughout the appeal period, which are less severe, less frequent and shorter in duration than those contemplated by a 70 percent disability rating. 

While the Veteran relayed suffering from hypervigilance, which included checking doors and locking windows, there is no objective evidence of record suggesting his behavior rose to the level of engaging in obsessive rituals which interreference with routine activities. Further, the Veteran’s hypervigilance, along with the unlisted symptoms of flashbacks and being easily startled are similar to the listed symptoms of anxiety, suspiciousness, and panic attacks, which are contemplated by the assigned 50 percent rating. 

The symptoms of nightmares, fatigue, stress, decreased energy, and varied appetite are similar to chronic sleep impairment and disturbances of mood and motivation which are also contemplated by the assigned 50 percent rating. The Veteran’s complaints of difficulty concentrating are similar to impaired abstract thinking or disturbances of motivation or mood.

Even though the Veteran expressed suicidal ideation, which is similar to persistent danger of self-harm, which is contemplated by the diagnostic criteria associated with a 100 percent disability rating, the Board finds the severity, frequency and duration of his suicidal ideation has not risen to the level contemplated by the 100 percent disability rating or, for that matter, by the 70 percent disability rating. See Bankhead, 29 Vet. App. at 19.

The record documents the Veteran’s statement on June 18, 2018 that he was contemplating shooting himself based on frustration over his VA benefits. When he told his provider about his thoughts and the incident, he agreed to visit the VA emergency room for a psychiatric evaluation and possible inpatient care. At the time he downplayed his suicidal ideations but agreed to voluntary hospitalization. While the Veteran was hospitalized for one week, as discussed in detail below, the evidence of record does not indicate that the Veteran’s suicidal ideations resulted in occupational and social impairment with deficiencies in most areas.

The Board observes that the Veteran has reported experiencing hallucinations and delusions. For the reasons set forth below, the Board assigns these statements low probative value based on inconsistencies in the record. In addition to the inconstancies noted below, the Board observes that its finding is supported by the August 2016 SSA examiner who noted that the Veteran was exaggerating and magnifying his symptoms as his symptomatology did not match his clinical presentation or what would ordinarily be expected.

With respect to the report of hallucinations, aside from the Veteran’s report of experiencing hallucinations in August 2016 and November 2017. All other evidence of record, to include his lay statements, are either devoid of any references to hallucinations or found there was no evidence of hallucinations. This is significant because the Veteran reported during the August 2016 SSA evaluation, that his hallucinations onset in 2008 and occurred four times per week, however treatment records prior to the SSA evaluation document that hallucinations were not present. If the Veteran had been experiencing hallucinations at such a time, it would be reasonable that he would have reported these symptoms, especially during one of his VA examinations where such symptomatology is routinely addressed. 

The only report of delusions came in November 2017 VA Mental Health Initial Evaluation Note. At that time the Veteran reported having paranoia and/or persecutory delusions, special powers and/or grandiose delusions as well as ideas of reference. However, the November 2017 VA Mental Health Initial Evaluation Note did not include any information regarding when these delusions first manifested or the frequency with which they occurred or their duration. At all times leading up to the November 2017 evaluation and thereafter, no evidence of delusions was found by the VA treatment provider and examiners and the Veteran pointedly denied suffering from any delusions. Notably, in both their February 2018 and February 2019 letters, Dr. R.A. did not include delusions among his symptoms even though he had been in Dr. R.A.’s care since December 2017. 

Upon review, the Board notes that the above-mentioned November 2017 VA treatment record that documents the Veteran’s complaints of delusions begins with his “complaint” that “the DAV and the Board of Appeals keep saying that [he] has not been diagnosed with PTSD by a psychiatrist and [he] needs to get this diagnosis from a psychiatrist to get [his] mental health benefits.” Based on this “complaint” and a review of the evidence of record, the Board affords little probative value to this treatment record as the Veteran’s statements appear to have been influenced by an attempt to get benefits from VA. See Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) (VA cannot ignore a veteran's testimony simply because the veteran is an interested party; personal interest may, however, affect the credibility of the evidence). 

The Veteran’s impulse control was found to be impaired was in June 2018 following his report of suicidal ideation. At that time, the VA treatment provider assessed it ranged from poor to fair without further information bearing on whether it was evidenced by unprovoked irritability with periods of violence or similar behavior rising to the level of unprovoked irritability with periods of violence. Even though in November 2012, he indicated that he has come close to hurting others, it was in the context of being approached without his knowledge and not associated with his complaints of irritability or anger. While he also described becoming angered when he felt the situation was unjust in November 2012, he did not provide any information regarding how his anger manifested. Although once in December 2012 he averred that his anger got the best of him. He did not elaborate on what that entailed. While a January 2013 D.C.S.B. treatment provider observed he was very confrontational during that session, the D.C.S.B. treatment provider’s comment stopped there and there was nothing to suggest his behavior rose to the level of unprovoked irritability with periods of violence. To the contrary, in January 2013, the he stated he has always been able to his anger and has never reached the point of aggression. Further, on a few occasions, he claimed his isolation was due in part to his dislike of confrontations or negativity. Most notably, despite considering his report of irritability and angry outbursts and inability to get along with other people as a result in August 2016, the SSA examiner found his social impairment was moderate. Even then, the SSA examiner found there was no evidence of any impairment in his ability to interact appropriately with the public. 

While at times the Veteran complained that his psychiatric symptoms interfered with his ability to perform daily living activities, he did not specify the severity, frequency and duration with which they interfered nor identified the activities impacted. During the August 2016 SSA evaluation, the SSA examiner documented that he did not report any impairment with his activities of daily living even though he was observed to be exaggerating and magnifying him symptoms at that time. While a May 2014 VA treatment provider indicated he showed up for the appointment unkempt and unusually dressed, treatment records from May 2014 immediately prior to and from June 2014 shortly thereafter show it was not a regularly occurrence as these treatment providers observed he presented appropriately dressed and groomed. Although on two occasions in less than a span of a month in June 2018 and July 2018, VA treatment providers found he was malodorous despite presenting for the appoint with fair grooming, the evidence of record prior to and after fail to show his malodorous state was sustained over a duration of one month or greater. To the contrary, at all other times, his was at least able to maintain fair hygiene. However, the record does indicate that the Veteran had a period where he neglected his personal appearance or hygiene.

With respect to the 70 percent criteria noted above, the Board finds that while these symptoms were present during the appeal period, the evidence overall does not demonstrate the level of impairment associated with a 70 percent rating. As early as 2009, the Board notes the Veteran was the owner of a landscaping company and there is no evidence of record, to include his own lay statements, indicating his business was unsuccessful because of his psychiatric symptoms. To the contrary, he consistently attributed the failure of his landscaping business to the general economic conditions that existed at that time. He has denied ever being fired from a job or having difficulty with supervisors or co-workers. He attempted to run a restaurant for a year in 2013, but this business was also unsuccessful. Nevertheless, he did not attribute the failure of this business to his psychiatric symptoms. Rather, he indicated it was also due to a lack of business. Even though he claimed he was reported being unemployed thereafter, he admitted having taken on a role as a minister. While during the March 2017 Board videoconference hearing that he believed his psychiatric condition prevented him from obtaining employment because it inevitably came up during interviews, his testimony did not describe any actual occupational impairment resulting from the symptoms discussed herein. Most telling is the August 2016 SSA examiner’s findings. The SSA examiner acknowledged his symptoms he reported during that evaluation represented his typical psychological functioning over the past 40 years. Even so, they would not prevent him from appropriately adapting to the stressors resulting from the demands of being in a work environment, daily functioning and social interactions. 

At no time did the Veteran’s symptoms result in occupational and social impairment with deficiencies in most areas. While his familial relationships fluctuated during the pendency of this appeal, he appears to have been able to establish and maintain other social relationships. All the while asserting that he tended to isolate himself, he also reported taking on a role as a minister, attending church and other functions, and spending time with other people in his housing unit. Again, the August 2016 SSA examiner determined his social impairment was moderate in nature at the time of the evaluation and had been so essentially throughout the past 40 years based on his reports. 

In view of the above, the Board finds the level of impairment caused by the Veteran’s psychiatric symptoms more closely approximates the level of impairment associated with a 50 percent disability rating throughout the pendency of this appeal. He experienced occupational and social impairment with reduced reliability and productivity. 

While the Veteran did experience symptoms contemplated by the higher 70 percent, namely suicidal ideation, impaired impulse control, and neglect of personal hygiene, the evidence overall does not demonstrate these symptoms resulted in the level of impairment associated with a 70 percent disability rating, much less a higher 100 percent disability rating. 

Accordingly, an initial disability rating of 50 percent, but no higher, prior to June 18, 2018 other trauma and stressor related disorder is granted. However, an increased disability rating in excess of 50 percent from June 18, 2018 for other trauma and stressor related disorder is denied. 

2. The issue of entitlement to TDIU.

Laws and Regulations

TDIU may be assigned where the veteran is unable to secure or follow a substantially gainful occupation as a result of their service-connected disability(ies). 38 C.F.R. §§ 3.340, 3.341, 4.16. 

The sole fact that a veteran is unemployed or has difficulty obtaining employment is insufficient for TDIU purposes. See Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993). The evidence must show the veteran is incapable of performing the physical and/or mental acts required by employment by reason of their service-connected disability(ies). 

In this regard, the United States Court of Appeals for Veterans Claims (Court) has held the phrase “unable to secure and follow a substantially gainful occupation” in 38 C.F.R. § 4.16 has two components; one economic and the other non-economic. Ray v. Wilkie, 31 Vet. App. 58, 73-74 (2019). The economic component contemplates an occupation earning more than marginal income, outside of a protected environment, as determined by the United States Department of Commerce as the poverty threshold for one person. The non-economic component contemplates the veteran’s ability to follow and secure employment. In this respect, due consideration must be given to their history, education, skill and training; physical ability, both exertional and non-exertional, to perform the types of activities (e.g. sedentary, light, medium, heavy or very heavy) required by the occupation at issue; and mental ability to perform the activities required by the occupation at issue. Given sedentary is defined as “doing or requiring much sitting” the Board finds that sedentary employment is a job where the worker primarily sits down. See MERRIAM-WEBSTER’S COLLEGEIATE DICTIONARY 1123 (11th ed.) (2003).

In this context, appropriate factors for consideration are the veteran’s employment history, educational and vocational attainment and any other factors bearing on the issue. 38 C.F.R. §§ 3.341, 4.16. However, a veteran’s age or the impairment caused by nonservice-connected disabilities may not be considered. 38 C.F.R. §§ 3.341, 4.16, 4.19.

As a preliminary matter, for TDIU consideration the veteran must meet the disability rating percentage threshold. 38 U.S.C. § 1155; 38 C.F.R. § 4.16(a), (b). If a veteran is service-connected for only one disability, that disability must be rated at 60 percent disabling or more. 38 C.F.R. §§ 4.16(a), 4.25. If a veteran is service-connected for two or more disabilities, at least one of the disabilities must be rated at 40 percent disabling or more and the additional service-connected disabilities must bring the combined disability rating to 70 percent or more. Id.

Analysis

The Veteran contends that he has been incapable of accomplishing the physical and/or mental acts required by substantially gainful employment due to his service-connected other trauma and stressor related disorder.

The Agency of Original Jurisdiction has found the Veteran was not employed at the time of the April 2019 rating decision and had not been gainfully employed within the past five years.

As such, the question in this case is whether the Veteran has been incapable of performing the physical and/or mental acts required by employment by reason of his service-connected other trauma and stressor related disorder at any time during the appeal period. 

Throughout the appeal period, the Veteran has only been service connected for other trauma and stressor related disorder. Thus, he did not meet the criteria for schedular TDIU consideration at any time during the pendency of this appeal. 

Notwithstanding, TDIU on an extraschedular basis may be considered pursuant to 38 C.F.R. § 4.16(b). However, the Board does not have the authority to consider or award extraschedular TDIU in the first instance. Rather, the Board may only consider whether referral for extraschedular TDIU to the Director, Compensation Service is appropriate.

The pertinent psychiatric symptomatology and its resulting occupational and social impairment has been discussed above.

Despite considering the severe symptoms reported by the Veteran during the August 2016 evaluation, the SSA examiner concluded his symptoms would not prevent him from appropriately adapting to the stressors resulting from the demands of being in a work environment and his ability to interact appropriately with the public was unimpaired. Once more the Board notes, the August 2016 SSA examiner determined his overall impairment was moderate in nature at the time of the evaluation and had been so essentially throughout the past 40 years based on his reports. Since the August 2016 evaluation, his symptoms have remained largely consistent, supporting the finding that his occupational impairment, at worst, has continued to remain moderate. 

As a disability rating in it of itself recognizes the impairment makes it difficult to obtain and keep employment, in order for the Veteran to prevail on a claim of TDIU the record must reflect some factor that takes his case outside the norm. See Van Hoose, supra.

At the time the Veteran initiated this claim, while he indicated he was still employed, he also claimed to have last worked full-time in October 2009. See the March 2010 Veterans Application for Increased Compensation Based on Unemployability (Application). He reported being employed in the landscaping field from May 1998. He claimed to have lost a total of five years from work due to his illness. Prior to that time, he noted he had previous employment as a marketing consultant. 

Although the Veteran avowed his disability began affecting his ability to work full-time in 1994 and he became too disabled to work in May 2000, he simultaneously stated he last worked full-time in October 2009. 

In terms of his educational achievement, the Veteran reported having earned a college degree in business management. Thereafter, he attended another college from July 2008 to May 2010, but he did not indicate what, if any, degree or certification was earned. Cf. December 2009 PTSD VA Examination Report (the Veteran reported having obtain a certificate but did not clarify what for).

Outside of the March 2010 Application, the evidence of record also reveals the Veteran had prior work experience as an advertising and marketing executive. See March 2010 Statement in Support of Claim. He also enrolled in computer classes in 2013, but there is no information as to whether he earned another degree or a certification, or that he completed these classes.

Piecing together the Veteran’s lay statements of record, he was the owner of a landscaping business, then a restaurant immediately thereafter. His restaurant closed in December 2013. When these businesses closed, or perhaps overlapping with his businesses, he worked irregular full-time until May 2014. There is no indication that this was a protected work environment or that the Veteran was marginally employed. Additionally, while it appears he may not have been formally employed in this capacity, his lay statements indicate that at least as of May 2014 he had also taken on a role as a minister. Even though the evidence of record is unclear whether he continued in this role throughout the remainder of the appeal period, it does disclose he continued to be involved with his church to some degree. 

Further, the evidence of record shows, the Veteran has the education, skill and training to work in a wide range of environments to accommodate any occupational impairment stemming from his service-connected other trauma and stressor related disorder, if necessary.

There is nothing in the evidence of record establishing the Veteran’s ability to perform the physical acts required by employment was impaired due to his service-connected other trauma and stressor related disorder. 

Even after considering all other relevant factors, there is nothing in the evidence of record demonstrating the Veteran’s occupational impairment was greater than that recognized as a part of his 50 percent disability rating for his service-connected other trauma and stressor related disorder. 

Accordingly, the Board finds the preponderance of the evidence does not demonstrate the Veteran has been incapable of performing the physical and/or mental acts required by employment by reason of his service-connected other trauma and stressor related disorder. Therefore, referral for extraschedular TDIU to the Director, Compensation Service is not warranted and the claim is denied. 

 

 

M. Donohue

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board G. Suh, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.